## O'KELLEY, administrator, *v.* GHOLSTON.

1. A levy upon land entered on the *fi. fa.* in these terms, "I have this day levied the within *fi. fa.* on 422 acres of land as the property of H. P. Smith, and given the tenant in possession notice," signed by the sheriff, is void for uncertainty, and a sale thereunder passes no title as a sheriff's sale merely. But if the defendant in execution was present and was mentally competent to consent to the sale, and did so consent, and got the benefit of it in the application of the proceeds to valid judgments against him, his administrator, as well as himself, would be bound thereby.

2. If the defendant in execution was incompetent to consent, but in fact used language expressive of consent, and this was acted upon in good faith, his administrator could not in equity cancel the sheriff's deed and recover the land without accounting for so much of the purchase money as his intestate had the benefit of, with interest thereon. And unless the profits of the land with which the purchaser is chargeable would equal the amount of such money with interest, the difference should be paid or tendered before the deed is cancelled; or if necessary, the land should be decreed to be sold to raise a fund for this purpose. Deterring bidders at a sheriff's sale for the benefit of the defendant, and with his consent, would not vitiate the sale as between him and the purchaser.

March 31, 1892. Argued at the last term; BOYNTON, Judge, presiding in lieu of LUMPKIN, Justice, disqualified.

Levy and Sale. Title. Estoppel. Cancellation of deed. Tender. Before Judge McWHORTER. Madison superior court. September term, 1890.

This case was made by petition in equity of S. C. O'Kelley as administrator of H. P. Smith, against R. B. Gholston, alleging as follows: H. P. Smith died intes-

v 89 1

tate, leaving debts unpaid and several heirs at law. At the time of his death and for twenty years next preceding, he was imbecile and totally unfit to transact any business, was subject to spasms, and for the greater part of the time almost a driveling idiot, and was totally incapable of defending suits, or of appearing in person in any court or in any matter where his rights were involved. At the time he became imbecile he owned and possessed a tract of land of 420 acres in the county of this suit (describing it). The title to said land was in him at the time of his death. About 1873 R. B. Gholston, by some sort of illegal proceeding, went into possession, and he and those colluding with him are still in possession. The records are silent touching what sort of claim Gholston has to said land. On information petitioner charges that Gholston collected up, without cost and without consideration to him, certain *fi. fas.* which had been issued against H. P. Smith, and which were null and void; that he had placed them in the hands of an officer who had no authority to execute them, " and said lands advertised to be sold under the same "; that when the time came to consummate said fraudulent or pretended sale, Gholston made a speech to those who had assembled and bid for the land, in which he stated to them that he proposed, if he bought the land, to allow H. P. Smith to use and occupy it during his life, that Smith " had homesteaded said land, and if he bought, allow the said H. P. Smith to remain in possession and control until his death"; that when the bidding began and some one else dared bid against Gholston, he stopped the sheriff and again announced that his bids were made upon the proposition that possession would not be disturbed in H. P. Smith during his lifetime, and that he did not want anybody to bid for it who would not consent to do as much; that by this and various other methods Gholston prevented any bids of any con-

sequence being made for the land, and had it knocked
off to himself at a sum less than one tenth its value;
that Gholston received these void *fi. fas.* without consid-
eration and had no control of them; that the sale was
made without any sufficient levy and without legal ad-
vertisement; that the whole proceeding on the part of
Gholston, ·from the beginning to the final sale, was
fraudulent and was intended to swindle H. P. Smith,
who at the time was still imbecile and unconscious of
what was taking place, having no guardian and no one
to represent him. At the time the judgments from which
the *fi. fas.* issued were obtained, Smith was imbecile and
the judgments were absolutely void. The consideration
of the cause of action was Confederate money worth but
few dollars at best; and Gholston knew these facts
when he came into possession of the *fi. fas.* He pro-
cured them for the express purpose of taking advantage of
Smith's condition, and obtained his land while he was un-
able to defend his rights; " and as a further step in said
fraudulent scheme, at the time of said sale he [not] only
stated the terms upon which he was bidding, but begged
that those present would not bid, alleging that if they
did they would deprive the old man of his home and
his property, whereas, if they would not bid and let him
buy it, he would allow the said H. P. to remain in pos-
session during life." The *fi. fas.* have never come to
light since the day of sale, and if any deed was made to
Gholston it has never been placed upon record. He
soon took possession of all the land except a few acres
on which he suffered the imbecile old man to remain
during his life, which amount was only saved by the
fact that it was not sold. On the 1st of May, 1869,
H. P. Smith, after proper application, had a homestead
approved by the ordinary, whereby all of said land first
above described was exempt from levy and sale under
any process, and a copy of the homestead papers is at-

tached to this petition. At the time of the sale the homestead had not terminated and the property was not subject to. sale. Gholston has received the rents and profits of the land since 1873, of the yearly value of $300, and has cut timber therefrom of the value of $1,000. He refuses to surrender the land to petitioner, or to pay him the profits thereof, or to pay for the timber cut. The prayer is, for cancellation of whatever evidence of title Gholston may have; for judgment against him for all the land, the full amount of mesne profits, and the value of the timber cut; and for general relief, etc. By amendment it was alleged that Gholston did not take charge and possession of said lands and had no possession of any sort until the death of H. P. Smith in 1886, except about 100 acres of which he took possession in that year, a short while before H. P. Smith's death, and sold the same to Sims.

The defendant pleaded as follows: He denies that H. P. Smith was imbecile and totally unfit to transact any business for twenty years next preceding his death, but on the contrary, was a sane, rational man of ordinary sense and business capacity, and was capable of transacting the business pertaining to his own affairs during all of his mature life, except possibly the last two or three years thereof, when, as much or more from physical than mental infirmity, he was unable to attend to his affairs. He was not an idiot, and could in person have attended to any legal affairs touching his property, save during the last two or three years of his life. Respondent denies all of the petitioner's allegations as to the manner and effect of the sale, and avers that the land, less about fifty acres, was sold at sheriff's sale under legal levy after proper notice, by fair and open competition, and brought a fair price. The sale was under *fi. fas.* held by defendant for which he paid a valuable consideration; they were valid at the time of

the levy and sale, and were based on judgments which were legal and subsisting liens on the property sold. A deed was made by the sheriff to defendant, and money paid by him was by the sheriff appropriated to valid executions older than those of defendant, and a balance was credited on his *fi. fa.*, the sum remaining not being sufficient to pay it off. However, defendant ordered it to be entered satisfied and turned over to the clerk's office, and his best recollection is that such was done. He has not had the *fi. fa.* since, and has been unable, after diligent search in records of the clerk's and sheriff's offices and in his own papers, to find it. The sheriff's deed through mere inadvertence has not been recorded, till the importance of it was brought to his notice by this suit. He tenders the original for inspection. He denies that any improper or unfair conduct was indulged in by him at the sale, or that he was in collusion with any one to defraud H. P. Smith before, at or since the sale. He went into possession of the land so bought, without complaint or objection of Smith, his wife or his children or any one else; but on the contrary, permitted Smith, his wife and children to live on and cultivate portions of the land for years free of charge. In July, 1886, he sold 151 acres of the land to one Sims, and in January, 1890, sold to three other persons 219 acres, in both cases making warranty deeds, and his vendees are in possession of the portions so sold. The claim set up in the petition is stale, and therefore petitioner ought not to recover the land or any portion of it; the legal title is not in defendant, but in the persons to whom he conveyed. Attached to this plea are copies of the deeds from the defendant therein referred to; also, of three judgments, one in favor of M. D. L. Gholston against H. P. Smith, dated July 29, 1863, and two in favor of W. J. Gholston administrator, against H. P. Smith and T. C. Mitchell, dated September 10, 1863; also, of three

executions with the entries thereon, and of the sheriff's deed in question. The first execution, issued August 28, 1863, is in favor of M. D. L. Gholston against Henry P. Smith, based on a judgment rendered at the September term, 1863, of Madison superior court. It bears these entries: Assignment without recourse from M. D. L. Gholston to R. B. Gholston, January 23, 1864; cost paid by plaintiff, February 2, 1864; levy, June 1, 1869, by the sheriff, on 120 acres of land as the property of H. P. Smith; recital by the sheriff of sale of this land on the first Tuesday in July, 1869, for $456, of payment of $9.50 costs on this *fi. fa.*, and of application of the remainder to older justice court *fi. fas.* in the sheriff's hands; receipt by R. B. Gholston of the sheriff, July 6, 1869, of $9.50 costs paid by Gholston; levy, January 25, 1873, by the sheriff, on 422 acres of land as the property of H. P. Smith, with a recital of notice to the tenant in possession; receipt, September 2, 1873, by R. B. Gholston from the sheriff, of $271.48 in full of principal and interest on this *fi. fa.* Another of the executions, issued September 10, 1863, in favor of W. J. Gholston, administrator, against H. P. Smith and T. C. Mitchell, founded on a judgment rendered at the March term, 1864, of Madison superior court, has entries similar to those above mentioned, except that it was transferred by Gholston, administrator, to R. B. Gholston on January 27, 1863(?), for value received. A third execution, issued September 14, 1863, in favor of Gholston, administrator, against Smith and Mitchell, founded on a judgment rendered at the March term, 1864, of the same court, has some of the entries appearing on the other two executions, and appears to have been transferred for value received by Gholston, administrator, to R. B. Gholston, on January 27, 1864. The sheriff's deed is dated September 6, 1873, and recites a levy on the land sold under the three execu-

tions above mentioned, as land of H. P. Smith, "containing three hundred and seventy acres more or less, agreeably to the plat, fifty acres having——taken out as a homestead"; also public advertisement and sale at public outcry on the first Tuesday in August, 1873, and sale to R. B. Gholston, as the highest bidder, for $530. This deed was recorded on February 18, 1890.

Much testimony was introduced. The jury found for the plaintiff the premises in dispute, and that the sheriff's deed be cancelled, but found no rents. The defendant moved for a new trial on the grounds that the verdict was contrary to law and evidence; the motion was sustained, and the plaintiff excepted.

THOMAS & STRICKLAND and D. W. MEADOW, for plaintiff.

W. M. HOWARD by J. H. LUMPKIN, and BARROW & THOMAS, for defendant.

BOYNTON, Judge.

A sheriff or other officer, in making an entry of a levy on land, must give a plain and specific description thereof, and also state the interest of the defendant therein. This should be repeated in the advertisement. The description must be sufficiently distinct and elaborate to enable bidders at the sale to identify the premises by the boundary, number or name, or some other pointer contained in the levy and advertisement. Good faith to the defendant in execution and justice to the bidder, as well as the law, require this degree of care and particularity on the part of the officer. A failure in this respect cannot be cured by giving an additional description in the deed. The officer must first exercise such care as will authorize him to sell, before he can convey. And if the levy be void for uncertainty or deficiency in the description of the property, he would then be without authority to sell or convey. For these reasons, parties before purchasing at judicial sales

should be diligent in ascertaining whether the officer has authority to sell, and whether he has conformed to the requirements of the law in detail with such care as would enable him to make a legal sale. The entry of levy on executions in this case does not locate or describe the land, either by number of lot, or district or county, or by giving the names of adjacent land-owners. Such a levy is too vague and uncertain in its description to authorize a sale, and the sale thereunder passed no title as a sheriff's sale merely. Code, §§3640, 3647; 10 Ga. 74; 62 Ga. 447; 70 Ga. 756; 72 Ga. 475. But if the defendant in execution was present at the sale and had mental capacity to understand that his land was being sold and to contract for the sale of land, and did contract or consent to the sale in such manner as would make the sheriff's sale in effect his sale, and he received the benefit of the sale by the application of the proceeds to valid judgments against him, this would give the purchaser such an equity as would estop his administrator, as well as himself. 63 Ga. 32; 78 Ga. 54.

2. The plaintiff in the court below instituted an equitable proceeding to have the deed made by the sheriff cancelled. Before obtaining the relief sought, he should offer to do equity. If the purchaser paid the amount for which the land was bid off at the sheriff's sale, and it was applied to valid subsisting judgments against plaintiff's intestate, whether belonging to the purchaser or others, to the extent valid judgments against him were extinguished, his intestate was benefited, and if the deed be cancelled, the purchaser correspondingly injured. Therefore, before a recovery is had, he should pay, or tender, that amount with interest thereon. The equivalent of this may be effected by offsetting any mesne profits realized by the purchaser against that amount; or, if in adjusting the equities a balance is found in favor of the purchaser after he has accounted for mesne

profits, by providing in the decree for the sale of the land and the payment of such balance out of the proceeds of the sale.

Deterring bidders at a sheriff's sale for the benefit of the defendant, and with his consent, would not vitiate the sale as between him and the purchaser. But this general rule would not control if the defendant was of weak mind, and the purchaser, by deceitful promises or other artful means, took a fraudulent advantage of his condition and surroundings, and thereby obtained the land for much less than its then market value.

*Judgment granting new trial affirmed.*