[No. 4225.   Decided July 26, 1902.]

29    245
633    570

KATHARINA MURRAY, *Respondent*, v. B. F. BRIGGS *et al.*,
Appellants.

PURCHASE AT EXECUTION SALE — RIGHT OF TENANT IN POSSESSION.

Laws 1899, p. 93, § 15, awarding possession during the period
of redemption from an execution sale to a tenant in possession
holding under an unexpired lease confers no rights upon one
whose tenancy was created by persons who had had no interest
in or title to the property whatever.

EJECTMENT — POSSESSION OF DEFENDANTS — ALLEGATIONS OF COM-
PLAINT.

The complaint in an action of ejectment states a cause of
action against all the defendants instead of but one, when it
avers they are all in possession, and further avers that one of
them claims his right to possession by virtue of a tenancy from
the others, but does not allege that he is in exclusive possession
or that he claims such right.

SAME — EVIDENCE — MATERIALITY.

Where it is admitted by the pleadings in an action of eject-
ment that the defendants are jointly in possession, and that one
of them claims to hold under the others as their tenant, the terms
of the tenancy are not material, and hence the rejection of evi-
dence bearing thereon would not constitute error.

SAME.

In an action of ejectment it is not error to refuse the admis-
sion in evidence of a deed to defendant's grantor from one who
never had the legal title to the premises, and who had parted
with whatever equitable interest he had therein prior to the
execution of the deed.

SAME — DEED AS EVIDENCE — MISDESCRIPTION OF PROPERTY — EFFECT.

A deed which fails to identify the property cannot be given
in evidence in an action of ejectment in order to prove defend-
ant's title, although an offer is made to show a mistake in the
description; it could not be rendered competent as evidence, until
reformed in a proceeding brought for that purpose.

EXECUTION—CANNOT ISSUE ON TRANSCRIPT OF JUDGMENT.

In the absence of statutory authority, an execution cannot be
issued upon a mere transcript filed in one county showing the

judgment rendered in another county, although, by virtue of Bal. Code, § 5132, the filing of such transcript of judgment establishes a lien upon the debtor's real estate in the county where filed.

EXECUTION SALE — ESTOPPEL OF DEBTOR TO DISPUTE VALIDITY.

The fact that a judgment debtor was present at a void sale on execution of his land, which was bid in for the amount of the debt by the judgment creditor on the expressed wish of the debtor and his wife that he do so, and that the debtor afterwards acted as agent for such purchaser in collecting rents from the property, would not estop such judgment debtor nor his successors in interest from questioning the purchaser's title, where such execution sale was absolutely void and the debtor had acquiesced therein through ignorance of that fact, and the purchaser had not been placed in any worse position by reason of such acquiescence.

SAME — RIGHT OF DEBTOR TO WAIVE LEGAL FORMALITIES.

A debtor in failing circumstances, upon all whose real estate a levy has been made, cannot waive any of the formalities established by law for the sale of property under execution.

APPURTENANCES — CANAL AND WATER RIGHTS.

A canal and water right, constructed and used by the owners of mill property for the benefit of the mill, is appurtenant thereto, although a portion of the water flowing through the canal may be applied to irrigating purposes.

Appeal from Superior Court, Kittitas County.—Hon. FRANK H. RUDKIN, Judge. Affirmed.

*E. F. Blaine,* for appellants.

*Graves & Englehart,* for respondent.

The opinion of the court was delivered by

HADLEY, J.—This suit was brought by respondent against appellants to recover possession of certain real property in Kittitas county, together with alleged accrued rents and profits for the use and occupation thereof. In the complaint it is alleged, in substance, that at the time of the entry of the judgment in favor of respondent, and of

making the sale thereunder, hereinafter mentioned, one
John A. Shoudy was, and for several years prior thereto
had been, the owner in fee of the following described prem-
ises in said county, towit, lots 6 and 7 in block D of Depot
Addition to the city of Ellensburg, together with a flouring
mill thereon situated, and a water canal and flume, water
right and water power appurtenant to said lots and mill;
that through said canal is carried a large amount of water
appropriated from the waters of the Yakima river, and
that the water flowing through said canal has been appro-
priated and continuously used for many years last past
for the purpose of furnishing power for said mill, and has
been used exclusively as a propelling power of the machin-
ery thereon and as appurtenant to the mill; that on the
14th day of March, 1900, respondent obtained a judgment
in the superior court of said county against the said John
A. Shoudy for more than $10,000; that on the 22d day of
January, 1901, an execution was issued under said judg-
ment, and thereafter levied upon the lands and property
above described as the property of John A. Shoudy; that
thereafter, on the 9th day of March, 1901, sale of said
property was duly made under said execution, and all the
interest of said Shoudy was purchased by respondent as
the highest bidder therefor; that thereupon a sheriff's cer-
tificate of sale was issued to respondent, and the sale was
duly confirmed; that neither said Shoudy nor any other
person has redeemed said premises from such sale, and
that by virtue of such sale respondent was at once and is
now entitled to the possession thereof; that ever since said
sale the appellants have been in possession of said premises,
unlawfully withholding the same from respondent, and
that they, and each of them, still so unlawfully withhold
possession, claiming to be entitled thereto; that the appel-
lant Olsen claims to be entitled to possession under and

by virtue of a tenancy from his co-appellants, and as a tenant from month to month, and claims by no other title or right to possession; that appellants Briggs and Denny claim and assert some interest in the premises adverse to respondent, and under such claim they unlawfully withhold the possession, and ever since the date of said sale they have so withheld such possession; but that they have no title or interest whatsoever in the premises or any part thereof; that the value of the rents and profits and of the use and occupation of the premises is $125 per month. Recovery of possession is demanded, and also judgment for $125 per month from the date of said execution sale. The answer denies that said Shoudy was at the time of said levy and sale the owner of said lots and the flouring mill thereon, or of said water canal, flume, and water right. It also denies that the water canal, flume, and water right were appurtenant to said mill, and denies that the water flowing through the canal was appropriated for the purpose of furnishing power for the mill, and generally the other material allegations of the complaint are denied. It is affirmatively alleged that on and prior to the 27th day of March, 1894, said John A. Shoudy was largely indebted to Dexter Horton and A. A. Denny, and that prior to said date said indebtedness was assigned to appellant Briggs, who on the date mentioned recovered thereon a judgment against said Shoudy, in the superior court of King county, for more than $22,000; that thereafter, on the 28th day of March, 1894, a transcript of said judgment was filed in the office of the clerk of the superior court of said Kittitas county, and in March, 1899, an execution upon said judgment was issued out of the superior court of said Kittitas county, and on the 6th day of May, 1899, the sheriff of said county, by virtue of such execution, sold to said Briggs the property described in the

complaint, together with a large amount of other property, for all of which said Briggs bid at the sale more than $37,000, being the full amount of his judgment and interest thereon; that a certificate of sale was issued by said sheriff to said Briggs as such purchaser; that said John A. Shoudy and M. E. Shoudy, his wife, had full knowledge of the issuance of said execution and of the published and posted notices of said sale; that prior to the sale said Shoudy and wife pointed out to the purchaser the property advertised for sale, and requested the purchaser to bid the full amount of said judgment, which he agreed to do; that said John A. Shoudy attended said sale, and made such request at that time; that at all times prior to the death of said John A. Shoudy he did, and at all times said M. E. Shoudy did, and now does, acquiesce in said sale, and neither of them has at any time questioned its regularity or validity; that immediately upon the purchase of said property, at said sale, appellant Briggs entered into possession of the lots described in the complaint, and the flouring mill and other property thereon situate, and ever since has been and now is in the open and notorious possession of the same, and that said John A. and M. E. Shoudy delivered to him such possession; that immediately after said sale said Briggs satisfied said judgment upon the execution docket in the clerk's office of said superior court of Kittitas county; that, ever since, said Briggs has paid the taxes and insurance upon said property, kept it in repair, and received rents therefrom, with the knowledge and acquiescence of said John A. Shoudy and wife and the property has never been redeemed from the sale. It is further alleged that on the second day of March, 1901, Dexter Shoudy, Hattie Shoudy, John A. Shoudy, and M. E. Shoudy executed a deed to appellant Rolland H. Denny, for the flume and water canal described in the complaint;

that the object and purpose of said deed was to secure the title to said flume and canal, water appropriation, and water right, in said Rolland H. Denny, as trustee for the benefit of Dexter Horton and the estate of A. A. Denny, deceased; Dexter Horton and said estate of A. A. Denny being the beneficial owners of said lots and the mill and other property thereon; said Briggs at all times holding the same in trust. It is also alleged that the flume and canal were constructed for the purpose of supplying water for the irrigation of land and for furnishing power. The reply denies the averments of the affirmative answer, and avers that at all the times mentioned in the answer said John A. Shoudy was a failing debtor and wholly insolvent. Upon the issues as above stated, the cause was tried by the court without a jury; the jury being waived. The court found in favor of respondent as the plaintiff below, and entered judgment awarding possession to her, and also for the recovery of $562.50 for rents and profits and the reasonable value of the use and occupation of the premises from the date of the commencement of the action. From such judgment, the defendants below have appealed.

It is assigned as error that the court overruled the several demurrers of appellants to the complaint. It is first insisted that the complaint does not state a cause of action as to appellant Olsen, for the alleged reason that the complaint shows that said Olsen was a tenant in possession at the time of respondent's execution sale, and that as such he cannot be ousted by respondent merely by virtue of her rights as an execution purchaser. The provisions of § 15, ch. 53, pp. 93, 94, Session Laws 1899, are invoked in support of this contention. It will be observed that the statute mentioned awards possession to a tenant in possession holding under an unexpired lease during the period of redemption from an execution sale. The complaint here,

however, alleges that appellant Olsen claimed possession as a tenant of his co-appellants, and further alleged that such co-appellants, as his landlords, had no interest in or title to the property whatever. It therefore follows that they had no power to create a tenancy for Olsen, and if he claims to hold as a tenant under one who had no right or power to grant him a tenancy, then he is not a tenant within the meaning of the statute. Manifestly the tenancy intended by the statute must be a lawful and valid one, created by the judgment debtor as owner of the land, or by some one holding under him who is authorized to create it. Under the averments of the complaint, Olsen is not such a tenant. We think the complaint states a cause of action against him, and that his demurrer to the complaint was properly overruled.

It is further alleged, under the above assignment, that the complaint does not state a cause of action against appellants Briggs and Denny, for the alleged reason that the property was in the possession of Olsen. The complaint in effect alleges a joint possession in all the appellants, since it avers that they are all in possession. This is supplemented by the further averment that Olsen claims his right to possession by virtue of a tenancy from the others, but it is not alleged that he is in exclusive possession, or that he claims the right thereto. The complaint states a cause of action against both Briggs and Denny, and their demurrers were also properly overruled.

It is next assigned that the court erred in refusing to allow appellants to show the terms of the lease under which appellant Olsen claims to hold the premises in controversy. It is insisted that the complaint alleges that Olsen claims to hold from the other appellants as a tenant from month to month, and that no notice to terminate the tenancy, or demand to quit at the end of any monthly term, is alleged;

that, as a tenant in possession, they should have been permitted to show the nature of his term,—when a month thereunder began and ended, and when the rent was due; that he at least cannot be ousted, during the period of redemption, until he has committed some breach of the terms and conditions of the lease under which he holds. This evidence was refused by the court for the reason that the allegation of the complaint concerning joint possession of all the appellants is expressly admitted by the answer, and likewise the allegation that Olsen claims to hold under his co-appellants. It was the view of the court, and we think a correct one, that under the issues Olsen could claim no greater rights than his alleged landlords. If they had not the right to create him a tenant of these premises, he had no right to possession. Briggs and Denny, by their answer, set up estate in themselves, but no special estate derived from any other source than from Briggs and Denny is pleaded as to Olsen. Under § 5509, Bal. Code, it was necessary to plead such estate in Olsen if they sought to introduce evidence thereof. The only claim of estate as to Olsen is that pleaded in the complaint, and it is admitted that that estate is a claim of tenancy from the others. The terms of that tenancy are, therefore, not material. If the estate of the others prevails, Olsen must prevail, but if their estate fails he must fail, without regard to what may have been the terms of the tenancy between them. Under the issues, it was not error to reject the evidence.

It is next assigned that the court erred in refusing to allow appellants to show an alleged former interest of Dexter Shoudy in the said canal and water right, he being a grantor under whom appellant Denny claims to hold. The refusal of the court to which this assignment is directed related to the offer of a deed from one Tjossem and

wife to Dexter Shoudy. It appears that said Tjossem was at one time a partner with said John A. Shoudy in the mill property, and assisted in the construction of the canal. The true relation of the two was found by the court to have been as follows:

"The said Tjossem never at any time had any legal title to the premises above described, but the legal title thereto was vested in said John A. Shoudy and the only interest which was held by the said R. P. Tjossem was that which he had by reason of his oral partnership agreement with the said John A. Shoudy; and that in the latter part of 1887 the said R. P. Tjossem and the said John A. Shoudy dissolved their said partnership and partnership agreement and adjusted their accounts, and the said John A. Shoudy paid to the said R. P. Tjossem the balance due him upon their said accounts and the said R. P. Tjossem withdrew from said partnership agreement, and orally transferred all his interests in the partnership property to and left the said John A. Shoudy vested with full legal and equitable interest in all of said property."

The above finding, we think, is sustained by the testimony, and it is based chiefly upon the testimony of Tjossem himself. We do not discover in the testimony a statement of the exact year of the dissolution of the partnership and settlement of accounts, which the court found to be the latter part of 1887, but it does appear from the testimony of Tjossem that the deed from him to Dexter Shoudy, offered in evidence, was executed after said dissolution and settlement. The deed bears date the 27th day of December, 1887, and was acknowledged August 24, 1888. The finding as to the date of partnership settlement was therefore justified by the evidence. It thus appears that when Tjossem made this deed he had no interest in the property. He never held any legal title to it. John A. Shoudy held the legal title at all times, and when the

partnership settlement was made Tjossem's equitable inter-
est, which existed only by virtue of a verbal agreement,
passed from him. These facts having appeared by the tes-
timony of Tjossem, the grantor in the deed, and while he
was upon the stand as a witness in behalf of appellants,
we think the deed was properly rejected as not being an
instrument which conveyed any interest to Dexter Shoudy
which he could in turn convey to appellants. Moreover,
a further objection was made to the deed because it did not
describe the property in question. The description in the
deed is as follows: "Lots 6 and 7 in block C of the ———
Addition to the City of Ellensburg." The property de-
scribed in the complaint is in block D in Depot addition.
Thus the deed fails to identify either the addition or the
block of the location of the land in question. As it stood,
it certainly was not competent evidence touching the prop-
erty in dispute. If the intention was to make a transfer
of this property to Dexter Shoudy, and by mistake it was
not done, such mistake should have been corrected by ap-
propriate proceeding in order to make the deed compe-
tent evidence here over objection. No attempt was made
to show that Tjossem and Dexter Shoudy ever had any
contractual relation touching this property. The offer was
rested upon the bare proposition that the deed was a
straight conveyance of the property in question, coupled
with the further offer to identify the property in dispute
as that intended to be conveyed. It is true the deed re-
ferred to a certain mill and water right, but it wholly
failed to describe the land in dispute, and as it stood we
think it was incompetent, and could not be corrected by
oral testimony at that time.

It is next assigned that the court erred in holding that
John A. Shoudy was the owner in fee of the property in
question at the time of the execution sale under respond-

ent's judgment, and that respondent, by reason of her purchase at said sale, became the owner of all of said John A. Shoudy's interest; and, further, that error was committed in holding that the execution sued out by appellant Briggs conferred no authority upon the sheriff of Kittitas county to make sale thereunder; and that said sale was void; that appellant Briggs took nothing by his intended purchase at said sale, and that John A. Shoudy and wife did not ratify and confirm the sale. As we have already seen, the judgment under which the execution sale was made to appellant Briggs was obtained in King county, and the execution under which the alleged sale was made was issued in Kittitas county, by authority of a mere transcript of the judgment. Such an execution is held to be without authority in the absence of a statute authorizing it. 8 Enc. Pl. & Pr., p. 365; *Seaton v. Hamilton,* 10 Iowa, 394; *Furman v. Dewell,* 35 Iowa, 170; *Shattuck v. Cox,* 97 Ind. 242; *Bostwick v. Benedict,* 4 S. D. 414 (57 N. W. 78); Freeman, Executions (3d ed.), § 14. Our statute, as found in § 5132, Bal. Code, provides for establishing a lien against the real estate of the judgment debtor by filing a transcript of the judgment in a county other than that in which the judgment is rendered. But we find no statutory authority for the issuance of an execution, by virtue of such transcript, in the county where it is filed. Under the rule above announced it must, therefore, be held that such authority does not exist. The above authorities hold that sales made under such executions are void. The particular sale under consideration here was held by this court to be void in *Packwood v. Briggs,* 25 Wash. 530 (65 Pac. 846). The decision there was based upon the ground that the lien of the judgment had expired at the time the sale was made. For both reasons assigned, it must therefore be held here that the sale as an execution sale was void,

and passed no title to the appellant Briggs as a purchaser; that said John A. Shoudy, the judgment debtor, was not, by virtue of such attempted execution sale, divested of his title to the property in question. But appellants further urge that respondent is estopped to question the validity of the sale by reason of the conduct of said John A. Shoudy and wife at the time of and subsequent to said sale; it being claimed that they acquiesced in and ratified the sale to such an extent that title passed to appellant Briggs notwithstanding the facts attending the issuance of the execution. It is true the said John A. Shoudy was present at the sale, and he and his wife expressed to Mr. Briggs a desire that he might bid in the property levied upon for the full amount of the judgment debt, and said Shoudy afterwards acted as a local agent for said Briggs in collecting rents from said property. To that extent, he acquiesced in the possession of Briggs. There is no testimony, however, that John A. Shoudy and wife knew that the sale was void as an execution sale. The former was dead at the time of the trial, and the latter testified that she did not know where the execution was issued. Unless they knew of the void character of the sale, they could not waive their rights to such an extent as to be afterwards estopped from asserting them,—at least, within reasonable time. Without such knowledge, what they did before the sale was done in the anticipation that a valid forced sale was about to be made, and their conduct after the sale must have been in the belief that such a valid and forced sale had been made. They did not occupy the position of voluntary conveyors. They knew that a judgment existed against them under which a sale could be made, and they were in the position of trying to do what appeared to them best under seemingly compulsory circumstances. One cannot be bound by a waiver of his rights unless

it is made with full knowledge of the rights he intends to waive. 28 Am. & Eng. Enc. Law, p. 527, and cases cited. The sale in question was not an irregular or voidable one, but it was void.

"Nothing can be founded upon an act or transaction that is absolutely void, but from such as are merely voidable, good titles may spring. And every stranger may take advantage of a void act, but not so of a voidable one." 28 Am. & Eng. Enc. Law, p. 474.

"A voidable sale passes the legal title subject to be avoided by a direct proceeding for that purpose, and it is not subject to a collateral attack. It may be ratified. But a void sale conveys no title, is incapable of ratification, and may be shown to be a nullity even in a collateral proceeding." *Moody's Heirs v. Moeller,* 72 Tex. 635 (13 Am. St. Rep. 839, 841, 10 S. W. 727).

Appellants cite a number of cases which, they urge, support their contention that a void execution sale may be ratified by the parties interested, or that their conduct may estop them from questioning its validity. A number of these cases relate to execution sales of personal property, where the owner stood by, and the sale was made with his consent and by his implied authority. In such cases, the authority of the sheriff as agent of the owner would doubtless be sufficient to pass the title upon delivery with the owner's consent. Such is the rule as to personal property; and no statute of frauds intervenes as in the case of real estate. Referring to the other cases cited, we find that in *Parson v. Henry,* 43 La. An. 307 (8 South. 918), real estate was sold, and it was claimed that payments had been made upon the judgment and that it was therefore satisfied. It does not appear, however, that such satisfaction was entered of record, and for aught that appears the execution was regular in form, and issued from the proper court. Such a sale might have been voidable,

but not void. In *Maple v. Kussart,* 53 Pa. St. 348 (91 Am. Dec. 214), a party was held estopped who induced another to buy, he having also received a portion of the proceeds of the sale, and the purchaser having been led by him to believe he was getting full title to the land. Such facts manifestly created such equities in favor of the purchaser as enabled him to maintain estoppel. In *O'Kelley v. Gholston,* 89 Ga. 1 (15 S. E. 123), the execution was regular and authorized, but the officer made an indefinite levy, and the sale was therefore irregular. While the language of the opinion may indicate that it was a void sale, yet the facts show that it was made under competent authority, and was voidable only because of irregularity. The party was held estopped by his conduct to question the sale. In *Bynum v. Govan,* 9 Tex. Civ. App. 559 (29 S. W. 1119), it was held that one cannot recover land sold under a void execution without refunding to the purchaser the money he paid, the purchaser being other than the execution creditor. This is upon the principle that the owner received the benefit of the amount paid in the credit on his debt. In the case at bar, an attempt was made to give Shoudy credit upon the judgment, but the judgment creditor, being the purchaser, parted with nothing, and the status of the parties was in fact not affected by the attempted sale. The case of *Sorrell v. Samuels,* (Ky.) 49 S. W. 762, is more directly in point than any case we find cited. There the sheriff of Morgan county sold a tract of land under execution, a portion of which was in that county and a portion in Bath county. The sale was made in 1860. The owner acquiesced in the validity of the sale. He afterwards died, and more than twenty years after the sale, in a proceeding to have this land declared that of the deceased by reason of the void sale, an estoppel was held. The sale was not void as to the lands sold in

Morgan county, and it was in evidence that the judgment debtor specially directed the sheriff in writing to sell the whole tract including the lands in both counties, and that the sheriff did so under authority of such written directions. The written authority may well be said to have clothed the sheriff with the power of an agent to sell independent of the execution. While the question of laches is not discussed in the opinion, yet the great lapse of time must have appealed to the court if the element of agency had not existed to create an estoppel.

It having been determined that the execution was void, and passed no title, then, if title passed at all, it must have been by virtue of Shoudy's consent and oral agreement with Briggs, and in conflict with the statute of frauds. Certainly, the doctrine of estoppel should not be held to create title to land unless strong equitable reasons exist in support of it.

"The doctrine of estoppel *in pais* should not be too readily extended when the effect of it is to divest men of their estates in lands. It should be remembered that we have a statute which makes a writing essential to the assignment or creation of an estate in real property, and that one of the objects of such statute was to render estates secure. In *Parker v. Parker,* (2 Met. 423,) the supreme court of Massachusetts held that a parol stipulation made by one party and acted on by the other, will not constitute an estoppel with reference to land unless it be attended by actual fraud or concealment. (5 Met. 461 and 478.)" *Davis v. Davis,* 26 Cal. 23, 42 (85 Am. Dec. 157).

In *Boggs v. Merced Mining Co.,* 14 Cal. 279, 367, 368, Mr. Chief Justice FIELD states the rule as follows:

"It is undoubtedly true that a party will, in many instances be concluded by his declarations or conduct, which have influenced the conduct of another to his injury. The

party is said, in such cases, to be estopped from denying the truth of his admissions. But to the application of this principle with respect to the title of property, it must appear, _first,_ that the party making the admission by his declarations or conduct, was apprised of the true state of his own title; _second,_ that he made the admission with the express intention to deceive, or with such careless and culpable negligence as to amount to constructive fraud; _third,_ that the other party was not only destitute of all knowledge of the true state of the title, but of the means of acquiring such knowledge, and, _fourth,_ that he relied directly upon such admission, and will be injured by allowing its truth to be disproved."

Tested by the above rule so clearly stated, we think title was not created by estoppel under the facts of the case at bar.

A further element also exists in this case. The evidence shows that, at the time of this sale, Mr. Shoudy was heavily indebted, and in failing circumstances. The attempted levy was upon all his real estate. It was held in _Succession of Hiligsberg,_ 1 La. An. 340, that a debtor, under such circumstances, cannot waive any of the formalities established by law for the sale of property under execution. We think the rule there announced is wholesome and correct. The sale being void the execution creditor, having paid no money, and having parted with nothing, is reinstated to all his rights under the judgment. Rorer, Judicial Sales (2d ed.), §§ 864, 865.

It is next contended that the canal and water right is not appurtenant to the mill property. We think it is clearly appurtenant. It was constructed by the owners of the mill property, and has always been used, since its construction, for the benefit of the mill. The mill property, as the principal thing, is dependent upon it, and, as a thing incident to the principal thing, the canal passes

with it. See *Book v. West, ante,* p. 70. The fact that
a portion of the water flowing through the canal may be
applied to irrigating purposes does not take from it the
character of an appurtenance to the mill to the extent of
the water required to operate it. We find no error. The
title to the property remained in John A. Shoudy.
The respondent had a judgment lien against it when
her execution sale was made. She took title at the
sale subject to redemption, and is entitled to the possession
at once, under the statute of 1899, against all the appel-
lants.

The judgment is affirmed.

REAVIS, C. J., and FULLERTON, WHITE, ANDERS,
MOUNT and DUNBAR, JJ., concur.