RUIS *v.* BRANCH *et al.*

A combination between a defendant in execution and a prospective bidder to suppress the usual competition at a sheriff's sale is illegal from considerations of public policy; but equity will not cancel the sheriff's deed made in pursuance of the sale, at the instance of the defendant, on the ground that bidders were deterred from bidding, as a result of the agreement between him and the purchaser.

MAY 15, 1912.

Equitable petition. Before Judge Conyers. Appling superior court. March 7, 1911.

*Wade H. Watson* and *V. E. Padgett,* for plaintiff.

*Levi O'Steen* and *Lankford & Dickerson,* for defendants.

EVANS, P. J. The action is by Jack Ruis against W. J. Branch, sheriff, Lott & Peterson, and Wash and E. D. Douglas, to cancel a sheriff's deed, and for other relief. The petition after amendment was dismissed on demurrer. In the original petition it was alleged as follows: Martha J. Taylor obtained against the plaintiff a judgment for $500; she held, as security for the note which was the basis of the judgment, a deed to his land; he also owed Lott and Peterson $375, which was secured by a second mortgage on the land and a mortgage on a mule. Execution issued on the Taylor

judgment, and it was duly levied on the land described in the security deed, and the land was advertised for sale. On the day of sale the attorney of Martha J. Taylor informed the plaintiff that he had seen Lott & Peterson, and that they had instructed him to bid off the property, and they would execute to the plaintiff their bond to reconvey to him the land upon the payment of their mortgage and the Taylor judgment within twelve months. Thereupon the plaintiff and the attorney informed the sheriff of this arrangement, and also informed other bidders, who were deterred from bidding on the land for the reason that they did not care to interfere with the plaintiff in redeeming his property. The sheriff was requested not to run the property any more than was absolutely necessary. In accordance with their agreement the land was bid off by the attorney, and a deed was executed by the sheriff to Lott and Peterson. After the sale the plaintiff applied to Lott and Peterson to perform their agreement by executing to him their bond to reconvey, when they denied that they authorized the attorney to make any agreement, and refused to negotiate with him; and conveyed the land to E. D. and Wash Douglas. It was alleged that the property was worth $1,250, and would have brought approximately this sum but for the announcement of the above-mentioned agreement respecting its sale.

About two years after the filing of the petition it was amended by alleging: that on the day of the sale the plaintiff informed the attorney that he had arranged with the judgment creditor, Taylor, that if he could raise $150 or $200, the sale would be postponed, and that he had about perfected a sale of the timber which would yield this sum, whereupon the attorney said that he had seen Lott and Peterson and they had agreed to buy the land on the terms' stated in his original petition; that when the sheriff offered the land for sale the attorney publicly announced that whoever might bid off the property would have to pay, in addition to his bid, the amount of the Lott and Peterson mortgage; that the sheriff did not sell the land in the usual manner, did not read the advertisement or cry aloud the land, but stepped to the front of the court-house door and announced that he would sell the Ruis property, addressing his remarks to the attorney and to the plaintiff; that the attorney bid on the property $610, the judgment creditor bid $615, and the attorney bid $620, when the property was knocked off to

him without requesting other bids; that E. D. and Wash Douglas had notice of all these facts when they purchased the land from Lott and Peterson; that since the filing of the petition all the defendants, except the sheriff, have been in possession of the land, and they have removed timber therefrom of the value of $300, have received rents of the value of $600, and appropriated to their use fertilizers in the stables belonging to the plaintiff, of the value of $30; and that these sums aggregate $930, which is $310 in excess of the purchase-price of the land at sheriff's sale. He prayed for cancellation of the sheriff's deed and the deed from Lott and Peterson to E. D. and Wash Douglas, for an accounting, for judgment for the excess over what the land brought at sheriff's sale, and for general relief. He offered, should the amount of the rents, issues, and profits be insufficient to repay the purchasers the amount of their bid, to account for the difference.

The petition is projected on the theory that the sheriff's sale was void, and it is prayed that the sheriff's deed to the purchasers and the deed to their vendees with notice be cancelled. The plaintiff is not seeking specific performance of any agreement between himself and the purchasers. What he demands is the cancellation of the deeds, on the ground that the effect of his arrangement with the attorney who bid for the purchasers, and the attorney's statement (while the sale was in progress) that prospective buyers would take title subject to a second mortgage on the property, was to chill the bidding and allow the purchasers to obtain the land at an undervalue. The plaintiff's proposition, stated differently, is, that he and the purchasers conspired to deter bidding at the sale in order that the land might bring less than its value, and when this was accomplished the purchasers refused to consummate the arrangement which induced him to enter into the conspiracy to depress the sale, and that this refusal on the part of the purchasers justifies a rescission of the sale.

It may be declared to be the settled policy of the law that sheriffs' sales shall be fairly conducted, and in such manner that the property to be sold shall not be needlessly sacrificed. Whenever it is made to appear that a sale under process is infected with fraud, irregularity, or error to the injury of either party, the sale will be set aside. Civil Code, § 6032. A combination to suppress the usual competition at a sheriff's sale is illegal from considerations

of public policy. Jones v. Caswell, 3 Johns. Cas. (N. Y.) 29 (2 Am. D. 134). This is unquestionably the general rule. But the principle that a party to a fraudulent agreement can not maintain a suit founded upon the refusal of the other party to the fraud to carry such agreement into effect is applicable alike to sales under execution as to privately executed sales. In conducting a sale under execution the sheriff acts as the agent of the defendant in execution, appointed by the law. *Dozier* v. *McWhorter,* 113 *Ga.* 587 (39 S. E. 106). The sale of the defendant's property at less than its market value was caused by his own act. He participated in the acts of the agent of the purchaser which depressed the sale of his land; it was his own conduct which depreciated the price of his property. Prospective purchasers yielded to the appeal made in his behalf, and in his presence, that they refrain from bidding on his land. "Deterring bidders at a sheriff's sale for the benefit of the defendant and with his consent would not vitiate the sale as between him and the purchaser." *O'Kelley* v. *Gholston,* 89 *Ga.* 1 (15 S. E. 123). In that case the purchaser made certain statements at the sale, and begged those present not to bid, saying if they did they would deprive the defendant in execution, who was an old man, of his home and property, whereas, if they would not bid and let him buy it, he would allow the defendant to remain in possession during life. The court stated the general rule in the quoted language, but said it would not control if the defendant was of weak mind, and the purchaser by deceitful means and artful practices took a fraudulent advantage of his mental condition. In the case at bar the plaintiff was laboring under no disabilities, and deliberately entered into a scheme to deter bidders upon the oral promise of the purchaser's agent that he would buy the land for him. The sale resulted just as he planned it, and he should not be permitted to vacate it because the purchaser broke faith with him in keeping his promise.

This is not a case where a purchaser who, without any agreement or connivance with the defendant in execution, deters bidders by falsely representing that he is buying the property for the benefit of the defendant. In such a case the defendant does not participate in the purchaser's conduct, and comes into court with clean hands, and is entitled to reparation for the injury accruing from the purchaser's false representation. According to his own plead-

ings the plaintiff in the case at bar conspired with the purchaser to depreciate the sale of his own property; conspired with him to taint the purity of the sheriff's sale; and equity will not relieve him from a condition resultant from his own conduct. Both he and the purchaser were involved in the effort to prostitute a judicial sale, and in such cases the maxim "potior est conditio defendentis" applies.

*Judgment affirmed. All the Justices concur.*