ADAMSON et al. v. BLACK ROCK POWER & IRRIGATION CO.

(Circuit Court of Appeals, Ninth Circuit. April 21, 1924.)

No. 4017.

1. Judgment ☞560—Decree not res judicata, where there is no evidence and no certainty to every intent.

Decree foreclosing trust deed executed by irrigation company was not res judicata, where there was no evidence and no certainty to every intent, but only conjecture as to matters litigated and decided so that between purchaser at foreclosure sale and landowners having water rights matter of trust deed was at large and open to contention.

2. Waters and water courses ☞156½—Right of purchasers of land from irrigation company held preserved by decree foreclosing trust deed.

If by virtue of irrigation company's trust deed any right accrued to subsequent purchasers of land, held, that it vested in them under their contracts or deeds from irrigation company, and was preserved to them by decree foreclosing trust deed.

3. Waters and water courses ☞154(1)—Trust in favor of future vendees in instrumentalities of irrigation held declared.

Stipulations in trust deed, statements, reservations, and contracts by irrigation company held to constitute declaration by irrigation company that it held instrumentalities in trust for subsequent vendees of lands to extent necessary for purpose of water supply to lands.

4. Trusts ☞21(1)—No particular formal or technical words or instruments necessary to create.

Trusts need no particular formal or technical words, or set phrases, and require only that they be in præsenti, expressed in unequivocal language, and admit of but one reasonable interpretation, and that settlor, intent, property, object, consideration, and beneficiaries appear with reasonable certainty, and they may be created in writings not contemporaneous, or not inter partes.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**5. Waters and water courses ⊙⟹257(1)—Landowners as beneficiaries of trust running with land cannot abandon rights by nonpayment of charges.**

Landowners did not abandon their rights in instrumentalities of irrigation company or their right to water by nonpayment of water charges, or by appeal to Public Service Commission, where they were beneficiaries of a trust declared by irrigation company, and covenanted to pay water charges, as covenants ran with land, inured to benefit of all beneficiaries, and trustee could not, on plea of abandonment by a beneficiary sever water right from land and increase burden on other beneficiaries, but was bound to enforce the covenant by foreclosure of its lien.

**6. Waters and water courses ⊙⟹154(1)—Perpetual water right held not merely contractual, with compulsory performance as only remedy.**

Right created by deeds of land by an irrigation company, with perpetual right to water, is not merely a contractual right so that only remedy would be compulsory performance, since sale of perpetual use of thing is sale of thing, whatever ground rent or other charge be reserved.

**7. Waters and water courses ⊙⟹154(1)—Source and instrumentalities impressed with servitude in favor of purchasers of land from irrigation company.**

Sale of land by irrigation company, with appurtenant water right and service, impresses source and instrumentalities in power of grantor and necessary to enjoyment of water with a servitude or easement, of which grantee cannot be deprived without his consent, including dam to raise water into canal supplying water, wheel, and pump, and whether driven by water, steam, air, gas, or electricity.

Appeal from the District Court of the United States for the Southern Division of the Eastern District of Washington; Frank H. Rudkin, Judge.

Suit in equity by the Black Rock Power & Irrigation Company against W. R. Adamson and others. From an adverse decree, defendants appeal. Reversed and remanded.

Carroll B. Graves, of Seattle, Wash., for appellants.

George Donworth, John C. Higgins, Elmer E. Todd, and Hyman Zettler, all of Seattle, Wash., for appellee.

Before GILBERT and HUNT, Circuit Judges, and BOURQUIN, District Judge.

BOURQUIN, District Judge. Defendants below, 357 in number, appeal from an adverse decree in a suit wherein both parties sought to quiet title. The evidence is that the Hanford Irrigation & Power Company, a Washington corporation, in that state initiated an irrigated lands enterprise by a bond issue secured by a trust deed of all its property, present and future. This deed directed that each bond be indorsed as follows:

"The trust deed executed to secure payment of this bond conveys the income from the sale of all water rights, lands and town lots owned or hereinafter to be acquired by the said Hanford Irrigation & Power Company, in excess of such sum of money derived from such sales as may be required for the company's operating expenses, the deferred payments on its lands, and the cost of construction and maintenance of its irrigation system, upon the express condition that all of the property rights and franchises of the said irrigating company, including the property mortgaged to secure the payment of this bond, is deemed to be pledged perpetually to all and each of the several owners of land and vendees of the obligor of land and those to become its vendee of land, their heirs, successors, and assigns, for the due performance

⊙⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

on the part of the obligor, its successors and assigns, of each and every contract to supply water for the irrigation of land hereintofore executed and which may be hereinafter executed by the obligor, and that each and every such contract shall be deemed appurtenant to the property included in said mortgage, and that in case of the foreclosure of said mortgage and sale of said property the purchaser shall be the successor of the obligor and obligated to perform said contracts and entitled and authorized to collect, receive, and give acquittances for the unpaid portions of the payments which may be due and to become due to the obligor for water rights and all annual charges for maintenance of the works constituting the means necessary to continue the supply and distribution of water for irrigating said lands."

The same also appears in the habendum: "Being expressly stipulated as a condition of this contract." Thereafter the corporation constructed a hydroelectric generating plant, an electric pumping plant, a 16-mile transmission line from plant to plant, a continuation of the line to and a substation, and a ditch or canal system from the pumping plant to convey water to the lands. The suit involves all the said instrumentalities, save the canal system, and the lands on which located.

Likewise subsequent to the trust deed the corporation, in pamphlets, advertised for sale the lands, "including a perpetual water supply," with reference therein to and photos of the power plant and canal and to the function of the plant to supply water to the irrigation system, and it sold to the appellants, severally, lands and appurtenant water rights for single considerations of $70 to $300 per acre. Without water the lands have little value. The deeds to appellants in the granting clause are of land, "together with the perpetual right to the use of water from the main canal" limited in amount and season. Characterizing this as a "water right," the deeds further provide that the vendees in their ditches will receive delivery of the water at the corporation's ditch, and only such water as can be supplied by the pumping plant; that the vendor may shut off water to repair instrumentalities; that the water right is not personal property, but appurtenant to and inseparable from the land; that the vendees shall pay to the vendor an annual maintenance charge of $1.50 per acre until 1913, and thereafter in reasonable amount, fixed by the vendor, to cover cost of maintenance and operation of the "canals," in part of the deeds, and of the "instrumentalities," in the others; that, if the vendees fail to pay the charge, the vendor may shut off the water until paid, and the charge is a lien on land and water right and may be foreclosed; that all covenants run with and perpetually bind the land, and all terms of the deeds bind and inure to the parties, their heirs, representatives, successors, and assigns.

Thereafter, in a suit to which appellants were parties, the trust deed was foreclosed. The decree only of that suit is in evidence, and of it the record contains only the following:

"It is further ordered, adjudged, and decreed, that all of the property rights and assets, franchises, and rights in and to property of every kind and description in which said company has any interest, shall be sold free and clear of every demand and claim whatsoever of said defendants, or any of them, and all persons claiming or to claim by, through or under them, or any of them, save and except that the property and franchises described in subdivisions (1), (2), (3), (3½), (9), and (10) of paragraph 4 of this decree shall

be sold subject to all the existing rights of the owners of the hereinafter described premises, their heirs, executors, administrators, and assigns under either their contracts or deeds from the Hanford Irrigation & Power Company, or its receiver, but in accordance with and subject to the terms and conditions of said contracts or deeds; it being the intention that said property, after the sale hereunder shall be subject to said rights to the extent that and as said rights may now exist in or against said property in the hands of the Hanford Irrigation & Power Company."

The subdivisions therein mentioned embrace the instrumentalities and lands of the instant suit. A receiver's sale followed, one Lyons purchased all the property, and he transferred it to three corporations, viz.: The instrumentalities and the lands on which located to appellee, the ditch or canal system to a ditch company, and the lands and land contracts to a land company. They, with common offices and manager, are operating collectively as did the Hanford Company singly.

In 1915 the ditch company raised the annual charge from $1.50 to $7 per acre, and filed a schedule thereof with the Public Service Commission of the state, but without waiving objections to jurisdiction. Later in that year some of appellants to the commission complained that the rates were unreasonable. A hearing was had, wherein the three corporation transferees were parties and objected to jurisdiction. The commission fixed a lower rate, which in 1919, in a suit by the ditch company and by a consent decree, was held confiscatory and unreasonable. Thereupon the ditch company again fixed the annual maintenance charge at $7 per acre, and in 1920 filed a schedule thereof with the commission. It appears that some of defendants have taken no water from the system, and some have taken none since the system was acquired by the ditch company; that some have paid no charges for 10 years prior to suit, and some have paid none since the system was acquired by the ditch company; that some have taken water in excess of the amount stipulated in contracts and deeds, and have paid the charges fixed by the ditch company. For irrigation the lands require from 48 to 96 acre inches of water per season.

The transmission lines are connected with like lines, at times either delivers current to the other, and since 1910 from these involved have been sold and delivered some current for lighting purposes. The present capacity of the generating plant exceeds the requirements of the pumping plant, but perhaps not, if all the lands of the enterprise were sold and irrigated.

The chief question is whether, by the trust deed or their deeds of purchase, appellants acquired any variety of right, title, interest or claim in, to, or upon the instrumentalities. They contend that in their behalf the trust deed charges a lien upon the instrumentalities, that it is an "express declaration" they are "to be perpetually held and applied" to performance of the water contracts, and that by the deeds of purchase they are subjected to at least an easement appurtenant to the lands and water rights conveyed to appellants. On the other hand, appellee insists appellants acquired no right, lien, claim, or easement whatever in or to the source of their water rights, or in

or to the means or instrumentalities of supply; that, so far as the supply is concerned, performance rests on nothing but the promise; that the proceedings and decree in foreclosure determined appellants took nothing by virtue of the trust deed, and that, if appellants ever had any variety of right or claim in respect to the instrumentalities, they have abandoned it by nonuser and by their resort to the Public Service Commission to determine water rates.

In its decision the learned trial court quotes so much of the decree of foreclosure as is in the record, but without comment, holds appellants' water rights are but to receive delivery of water from the owner of the system and confer "no right or interest in the means employed to that end," and withholds determination of the issue of abandonment.

[1, 2] In respect to what was necessarily litigated and decided in the foreclosure suit, it is clear there is no evidence and no certainty to every intent, but only conjecture, in consequence of which the decree is not res judicata, is no estoppel, and so between these parties the matter of the trust deed is at large and open to contention. Furthermore, if by virtue of the trust deed any right accrued to appellants, it vested in them "under their contracts or deeds from the Hanford" Company, and is preserved to them by the express language of the decree.

[3] As we view this instrument in the light of the circumstances of its execution and thereafter, the statements, reservations, stipulations, and contract therein constitute a declaration by the Hanford Company that it holds these instrumentalities in trust to the extent necessary for the purpose of water supply to prospective vendees of its lands, and that the vendees in the vendor settlor of the trust may repose confidence it forever will apply said instrumentalities to their use and benefit.

[4] It is hornbook law that trusts may be thus declared, or in several writings and less formal, or in writings not contemporaneous or not inter partes; that in creation they need no particular, formal, or technical words, no set phrases, and require only that they be in præsenti, expressed in unequivocal language, admit of but one reasonable interpretation; and that settlor, intent, property, object, consideration, and beneficiaries appear with reasonable certainty. This trust deed satisfies every requirement of equity to constitute a declaration of the trust as aforesaid. In so far as terms are concerned, they might be proven by parol, and are found in the deeds of the lands to the vendees for whose benefit the trust was created.

Adverting to the circumstances, the settlor was promoting an irrigated lands enterprise. The water, and not the land, was the more important consideration to purchasers. The settlor mortgaged the lands, water rights, and necessary instrumentalities. To avoid distrust in prospective vendees, to inspire them with confidence that land and water joined and bought at high prices would never be severed, that the water right would be perpetual in performance as in promise, and to induce them to buy, this declaration of trust was made in the mortgage and published to all prospective vendees. In it the settlor declared that these instrumentalities, necessary to the enjoyment of

the lands and water rights by it sold, are "pledged perpetually" to the use of its vendees; that is to say, not in possession, and as a lien to be foreclosed, sold, and diverted from the uses covenanted, but by the settlor and its successors, including any purchaser on foreclosure of the trust deed, to be forever held in trust and appropriated to the use and benefit of the vendees. The instrumentalities mortgaged were no more to be alienated from the vendees than were the lands and water rights equally mortgaged and thereafter purchased by the vendees. The latter's purchases were in reliance upon this promise, and are the beneficiaries' acceptances of the trust.

To the extent of these instrumentalities the declaration of trust is as definite and valid as the mortgage deed of them, however it may be in respect to other property and not here involved. It is here emphasized that in arid land irrigation enterprises, and including this one, the water right not only is a thing granted, but generally and here is the principal thing granted, for which the always large consideration is almost wholly paid, and without which probably no sale could be made save at nominal prices.

Appellants' deeds admitted them into the class of beneficiaries of the trust, prescribed the terms, and vested them with the rights thereof as cotenants, and charged with proportionate expense of maintenance and operation. These rights are preserved by the decree of foreclosure, survived the receiver's sale, and in the instrumentalities are an equitable estate of which appellants cannot be deprived. The extent of that estate is measured by and is sufficiently definite in the deeds of purchase, as definite as any water right and deed thereof can. or need be, viz. the perpetual use of the instrumentalities to the extent required to supply to appellants' lands water in amount and season reasonably necessary, but limited by their deeds of purchase. This will exclude the substation and transmission line to it from the spur line to the pumping plant, in that they are not at all necessary or used in supplying water to the lands; for, although the trust deed embraces all the settlor's property, taking into account the principles applicable to interpretation of trusts and the circumstances of this at bar, we believe the intent was a trust of the property only to the extent reasonably necessary to execute the general plan and to supply water to the vendees of lands.

[5] Adverting to the contention that some appellants have abandoned their rights by nonpayment of water charges or by appeal to the Public Service Commission, there is this to be said: In this as in any trust for a number, no beneficiary alone or with the trustee can sever his interest in the trust from that of other beneficiaries; and in so far as beneficiaries have covenanted to payments for the benefit of the trust, the covenants run with the land, inure to the benefit of all beneficiaries, and the obligation cannot be evaded. It is the duty of the trustee to execute the trust, enforce the covenants, compel payment of water charges, or apply the remedy the covenants provide, viz. to shut off water and to foreclose the liens on lands and water rights. Any beneficiary can compel the trustee to do so. The land and water rights inseparable, the burden of charges distributed over all, the trustee cannot, on plea of abandonment by a beneficiary,

sever the water right from the land, and increase the burden of charge upon the other beneficiaries. The defaulting beneficiary's land and water right together must be sold in foreclosure, so that the purchaser will enter the class of beneficiaries and aid in support of the trust. Every beneficiary has the right to and benefit of contribution, in support of the trust, by every other beneficiary of a class to be maintained full. This appellee trustee cannot thus fail in its duty, and by its wrong gain an advantage to itself in respect to the subject of the trust, the instrumentalities. Otherwise, beneficiary after beneficiary might abandon in the face of water rates already increased 360 per cent., the burden oppressive to the others they too might abandon, the trust (always of concern to the community at large, see Union, etc., Co. v. Durant, 95 U. S. 579, 24 L. Ed. 391) be destroyed, and the beneficiaries subjected to heavy loss. Doubtless the trustee would gain, could it shift its activities from the obligation to supply water at "cost" to the vendees, to selling electric current at a profit to itself; but, as the cited case observes, a court of equity will not countenance, but will prevent a trustee from thus violating his duty.

Moreover, although to fix water rates is vested in the trustee, their reasonableness is open to challenge by the beneficiaries in any appropriate tribunal, without the penalty of any forfeiture of estate or even of contractual rights. And the rates, suddenly increased over 360 per cent., justified challenge and inquiry, whether in good or bad faith. Furthermore, not appellant, but the ditch company, is entitled to payment of the rates. It is not complaining, is not a party herein, and the evidence is it claims no abandonment, but will deliver the water covenanted on default cured.

The cases holding that appeal to a Public Service Commission to fix rates other than those in a more or less optional and temporary contract for water supply is abandonment of the contract, do not involve trusts and the equitable estates of beneficiaries, nor even permanent water rights, go upon the theory that the water user had theretofore failed to perform his contract, and are not analogous. In the trust feature, this irrigation enterprise is novel so far as the cases disclose, and no case on "all fours" has been cited. Nevertheless the controlling principles are fundamental, settled, and clear, and are illustrated by innumerable authorities.

[6] There is another aspect of the instant suit that merits consideration. Even if appellants take nothing by the trust deed, but only by their deeds of purchase, appellee's case is little bettered. We cannot agree that the only right created by the deeds of purchase is a contractual promise to deliver water by any means, and the only remedy compulsory performance; for that is no more than the optional right of intermittent water from city pipes or the like, taken or rejected at will, and only that taken paid for. Here are perpetual water rights, purchased at high prices, granted as in themselves things, though also appurtenant to lands likewise granted; permanent obligations assumed by the purchasers to pay the upkeep and operation of the instrumentalities of water supply, whether or not the water is used; mutual covenants running with the land, and of private

contracts, instead of franchise obligations; and rights in water that are the subject of barter and sale and of the dignity of estates in real property. In brief, here are corporeal things and uses in respect to water, resting in grants that convey, whether or not expressed, all other things within the power of the grantor, and that are necessary to enjoyment of the things granted.

[7] The sale of the perpetual use of a thing is a sale of the thing, whatever ground rent or other charge be reserved. That is true of the right to the use of water as of aught else. Appellants' deeds are of land, "with the perpetual right to the use of water from the main canal," "the water right, * * * not personal property, but is appurtenant to the land," and "transferrable only with the land." It is true a sale and delivery of water or of a water right may convey no right in, to, or upon source of supply or instrumentalities; but it is otherwise of a sale of perpetual water supply or permanent water right from a canal, or sale of land with appurtenant water right and service. These latter impress the source and instrumentalities in the power of the grantor and necessary to enjoyment of the water with a servitude or easement of which the grantee cannot be deprived without his consent. See Zainey v. Linde, 121 Wash. 572, 209 Pac. 1085; Murray v. Briggs, 29 Wash. 245, 69 Pac. 765; First, etc., Bank v. Bitter Root Valley Irr. Co. (D. C.) 251 Fed. 326; Allen v. Coms., 179 Cal. 68, 175 Pac. 468, 8 A. L. R. 249; Jacob v. Lorenz, 98 Cal. 332, 33 Pac. 119; Cady v. Co., 134 N. Y. 118, 31 N. E. 246; Weil, Water Rights, §§ 456, 550 et seq.; Kinney, Irr. §§ 1011, 1017, 1018; Farnham, Waters, § 641.

Of course, the principles involved are not affected by the nature of the necessary instrumentalities. A dam to raise water into the canal, a wheel, a pump, and whether driven by water, steam, air, gas, or electricity, are equivalents equally subject to the servitude. So, too, the distance of part of the instrumentalities from other parts is practically unimportant. See Perrin v. Garfield, 37 Vt. 305. Without the generating plant and pumps provided to supply water to appellants' lands, their water rights cannot be enjoyed, and their lands are without value; and for their easement therein appellants cannot be compelled to accept any variety of substitute. All these are settled and clear principles, and nothing would be gained by further citation of authorities so numerous in the books. The division of the Hanford Company properties between three new corporations, whatever the object, has no effect on appellants' rights.

This suit determines nothing in respect to the increase in number of trustees and division of the trust between them, nor to the annual maintenance charge and what is the "cost" by it to be covered. Hence the ditch company is not a necessary party, though it might be a proper one. Likewise, the land company.

We find no necessity to consider article 12 of the Washington Constitution, relating to the continued liability of corporate franchises and property alienated.

The decree is reversed, and the cause remanded, to proceed, in accordance with this opinion, to decree for appellants.