[No. 9057.  Department One.  March 13, 1911.]

Eva Ennis Dobbins, *Respondent* v. Dexter Horton & Company, Bankers, *Appellant*.[1]

Husband and Wife—Wife's Separate Property—Personal Earnings—Agreement With Husband. The evidence sufficiently shows an agreement between husband and wife that her personal earnings after marriage should be her separate property, where it appears that the money earned by her in teaching during four years after marriage was applied in completing the purchase and improving property purchased and partly paid for by her before marriage, that the proceeds of such property were thereafter invested and reinvested by her, the husband having nothing to do with the same, under a general understanding between them at all times that it and all her earnings were her separate property.

Same—Wife's Separate Estate—What Constitutes. The fact that the husband joined in a note and mortgage upon real estate purchased and mostly paid for by the wife before marriage does not make the property or the proceeds therefrom community property.

Same. Assumption by the wife of mortgage indebtedness upon real estate purchased with her separate funds does not create a community obligation or make the property community property.

[1]Reported in 113 Pac. 1088.

Appeal from a judgment of the superior court for King county, Gilliam, J., entered April 30, 1910, upon findings in favor of the plaintiff, after a trial on the merits before the court without a jury, in an action to quiet title.    Affirmed.

*Peters & Powell* and *Marion Edwards*, for appellant.

*L. H. Wheeler*, for respondent.

PARKER, J.—By this action plaintiff seeks to have her title to real property quieted as against a claim of lien thereon, made by the defendant under a judgment rendered in its favor in the superior court for King county against her husband upon a community debt.    The question presented is whether or not the property involved was her separate property, and as such free from the lien of this judgment.    The defendant has appealed from a decree adjudging the property to be plaintiff's separate property and therefore not subject to the lien of the judgment.

In the year 1895, respondent entered into a contract for the purchase of a lot in Aberdeen, paying a portion of the purchase price in cash.    She had been engaged in teaching some years previous to that time and had accumulated about $1,000.    In June, 1896, she was married to D. N. Dobbins, and they have ever since been husband and wife.    A few months after their marriage she made final payment upon the lot and procured a deed therefor in compliance with her contract.    About this time she borrowed some money, securing it by a mortgage upon the lot.    This mortgage and the note accompanying it were executed by both herself and husband.    The money so borrowed by her she expended in the construction of a dwelling upon the lot, and probably paid a small balance therefrom upon the purchase price of the lot.    This debt was thereafter paid by her in monthly payments from money earned by her in teaching, covering a period of some four years following her marriage.    There was practically nothing furnished by the husband in either money or property towards the purchase of the lot or the

making of the improvements thereon. He did furnish a very small quantity of lumber, but we regard that of no consequence in determining the question of his community interest in the property. In January, 1906, she sold this property, receiving therefor $1,783.35, after paying expenses incident to the sale. A short time before she received the money upon this sale, she moved to Seattle and entered into a contract for the purchase of a house and lot, which for convenience we will call the Eighteenth avenue place. She was to pay therefor $2,700 and assume a $3,000 mortgage already on the property. The husband had nothing whatever to do with this deal.

When she received the proceeds of the Aberdeen property she completed the purchase of the Eighteenth avenue place by paying all of the $2,700 in cash, save about $150 for which she gave her personal note. The money then paid by her, in addition to the proceeds of the Aberdeen property, was from her personal earnings acquired either before or after marriage, which had been loaned by her in the meantime. She then received a deed for the Eighteenth avenue place subject to the $3,000 mortgage. Thereafter she sold the Eighteenth avenue place, which sale netted her about $5,000, the purchaser assuming the mortgage thereon. Thereafter she purchased the property here involved, paying therefor $1,700 in cash and assuming a $3,000 mortgage thereon. This mortgage is still unpaid. Her husband had nothing whatever to do with this deal. The evidence convinces us that the husband has never made any material contributions towards the acquisition of any of these properties, and that all of them were acquired by respondent as the product of her personal earnings. Respondent claims that there was an agreement between herself and husband, existing at all times since their marriage, to the effect that the personal earnings should be her separate property. She testified relative to this understanding as follows:

"Q. Have you talked with your husband something about this being your separate funds, this money that you received

from teaching? A. Yes, sir. Q. What has been said by him in relation to that, that particular matter, of whether those funds should be your separate funds, or otherwise? A. There has never been any disagreement about it. It has always been conceded by Mr. Dobbins that it is my property; and my money is my own to do what I chose with it. Q. That this money that you got from teaching is your separate funds? A. Yes, sir. . . . Q. Now, as a matter of fact, there has never been any formal discussion between you as to who should control any moneys or any properties? A. Yes, sir, certainly. We have never had any written contract; but certainly I control my own money. He has never—— Q. He has never asked for leave to control it, has he? A. Never. Q. It has just gone along as a matter of course, that you received the income? A. He has frequently said that it was mine to do what I pleased with it."

It would hardly be correct to say that the personal earnings of respondent were accumulated while she was living separate from her husband, so as to render them separate property under Rem. & Bal. Code, § 5920; though, for the purpose of throwing light on the understanding of the parties as to such earnings being her separate property, it is worthy of note that the evidence shows that they were separated during a large part of the time she was earning the money as a teacher, after marriage, which was applied in payment of the mortgage upon the Aberdeen property. This separation was not because of disagreement between them, but evidently for business reasons. During this separation, she continued to live on the Aberdeen property, while he was absent at Seattle and employed there. At all times since the marriage, she has managed her business affairs, so far as her separate earnings and the acquisition of these properties is concerned, as if she was an unmarried woman, all without any control whatever by her husband.

It seems to us that these facts are sufficient to show such an agreement between respondent and her husband as resulted in all of her personal earnings after marriage becoming her separate property. It is true that, if we look in this

evidence for some such specific agreement at some specific time, we may not be able to find it in clear and formal language; but taking her testimony as to the general understanding between herself and husband, in contradiction of which there is not a syllable of evidence, and the fact of the management of her earnings and the property acquired thereby without the slightest control of or interference by her husband, we cannot escape the conclusion that it was at all times since their marriage well understood by both of them that her earnings were to be her separate property. *Yake v. Pugh*, 13 Wash. 78, 42 Pac. 528, 52 Am. St. 17; *Corbett v. Sloan*, 52 Wash. 1, 99 Pac. 1025. This being true, of course the property acquired through her separate earnings also became her separate property. This is not a case of seeking to establish an agreement between a husband and wife as to the status of real property. Such an agreement, of course, could not be established by oral evidence. *Graves v. Graves*, 48 Wash. 664, 94 Pac. 481. This real property did not become separate property because of any agreement as to its status, but because it is the product of the wife's separate earnings which had become her separate property by agreement with her husband.

It is contended that the execution of the note and mortgage upon the Aberdeen property by both the husband and wife, and the use of the proceeds of that loan to pay a balance due upon the purchase price of that property and to improve the same by building a dwelling thereon, rendered it community property. The case of *Heintz v. Brown*, 46 Wash. 387, 90 Pac. 211, 123 Am. St. 937, may seem to lend support to this view. We think, however, that case is distinguishable from this. In that case the contract for the purchase of the land was made after marriage, while in this case it was made before marriage. In that case the contract was made presumably in the interests of the community, while the contract in this case, of course, was not so made, because there was then no community. In that case we are to pre-

sume that the community paid the loan which produced the money to pay for the land, and hence, the community did actually contribute to the purchase price; while in this case the community did not so contribute, but the whole of the loan was actually paid from the separate funds of the wife. In that case the community actually assisted in carrying out a contract for the purchase of land entered into after marriage, while in this case the husband only joined in the execution of a note and mortgage, thereby assisting in the carrying out of the contract for the purchase of the Aberdeen property, which contract had been made before marriage, and to the payment of which loan neither the husband nor the community ever contributed anything. We think it can be said in this case that the wife's separate funds actually produced all of these properties, notwithstanding there may possibly be a technical sense in which it could be said the loan, evidenced by the note and mortgage executed by both husband and wife, contributed to the acquisition of the Aberdeen property. We treat the question as though no rights were here involved except those of the husband and wife, so far as that property is concerned, since appellant's rights did not arise until years afterwards. We are of the opinion that the husband acquired no interest in that property.

It may be said that the assumption by respondent of the mortgage on the Eighteenth avenue place, and the assumption of the mortgage upon the property here involved, had the effect of creating a community obligation in the acquisition of those properties. We think such is not the case, in view of the evidence showing that those transactions were consummated as a part of the management of her separate property. *United States Fid. & Guar. Co. v. Lee*, 58 Wash. 16, 107 Pac. 870.

We conclude that the decree should be affirmed. It is so ordered.

DUNBAR, C. J., MOUNT, and MORRIS, JJ., concur.