[No. 13521. *En Banc.* July 21, 1917.]

## ARTHUR SCHRAMM, JUNIOR, *as Trustee, Appellant,* v. JOHN STEELE *et al., Respondents.*[1]

HUSBAND AND WIFE—COMMUNITY PROPERTY—LIABILITY FOR TORT OF HUSBAND. Since the liability of the community for the torts of the husband rest upon the statutory agency of the husband and exists only where the rule of *respondeat superior* applies, the community personalty is not liable for a judgment against the husband for alienating the affections of plaintiff's wife.

SAME — COMMUNITY PROPERTY — LIABILITY FOR SEPARATE DEBTS— AGENCY OF HUSBAND—STATUTES. Neither the husband nor wife having any independent proprietary interest in the community property, either real or personal, Rem. Code, § 5917, giving the husband the management and control of the community personal property, with like power of disposition as he has of his separate personal property, must be construed to be a management and control in the community interest, and merely vests him with absolute discretion in the voluntary disposition of the community personalty, and does not subject the same to involuntary sale to satisfy the husband's separate debts (overruling *Powell v. Pugh,* 13 Wash. 577, *Gund v. Parke,* 15 Wash. 393, and *Morse v. Estabrook,* 19 Wash. 92).

APPEAL—DECISION—STARE DECISIS. The rule of *stare decisis* should not be applied to prevent the overruling of decisions making community personal property liable for the husband's separate debts, since it does not affect the title to real property or affect vested rights in antecedent sales of personalty, and to follow the rule would perpetuate error and sacrifice principle.

Appeal from a judgment of the superior court for King county, Smith, J., entered April 14, 1916, dismissing an action for equitable relief, upon sustaining a demurrer to the complaint. Affirmed.

*Aust & Terhune,* for appellant.

*Scott Calhoun* and *John A. Homer,* for respondent Florence Steele.

*Chas. F. Munday,* for respondent Smithers.

[1]Reported in 166 Pac. 634.

ELLIS, C. J.—Suit in equity in the nature of a creditor's bill to set aside as fraudulent a transfer of personal property made by defendant John Steele to his wife, Florence Steele, and for other equitable relief.

Plaintiff alleges, in substance, that on January 8, 1916, a judgment for $3,000 was entered in favor of Robert H. Wilson against John Steele in the superior court of King county, upon complaint of Wilson against Steele for alienating the affections of Wilson's wife; that, on January 11, 1916, the judgment was assigned by Wilson to Schramm, plaintiff in this action; that the cause of action upon which the Wilson judgment was based accrued long prior to February 10, 1915; and that defendants John Steele and Florence Steele are, and at all times material were, husband and wife; that, as a marital community, they are the owners of described personal property worth about $6,000; that, after February 9, 1915, John Steele, without consideration, secretly and for the purpose of evading payment of Wilson's claim, transferred to his wife his community interest in all of their community personal property; that no bill of sale or other instrument evidencing such conveyance was ever filed for record; that, on November 29, 1915, defendants Steele and wife, executed to defendant, E. M. Smithers, a chattel mortgage for $6,000, covering all of their personal property; that they were not indebted to Smithers in excess of the sum of $1,000; that the mortgage was given pursuant to a secret agreement between defendants so to incumber the community property as to make impossible the collection of any judgment which Wilson might obtain against Steele; that the title was thus so clouded and apparently incumbered as to make the property wholly unsalable on execution; that plaintiff has no remedy at law; and that defendant John Steele has no property except his interest in the community personal property.

The prayer is that defendants be required to make disclosure of their dealings with the community property; that

Florence Steele give an accounting of all property and money received by her for and on account of the community; that all transfers made by Steele to his wife be declared null and void, and all personal property of defendants Steele be decreed to be community property; that the amount owing to Smithers be ascertained and that he be required to satisfy his mortgage upon payment of such sum; and that a receiver be appointed to conserve the community property until subjected to levy under plaintiff's execution.

Defendants separately demurred to the complaint upon the ground that the facts stated are insufficient to constitute a cause of action. The demurrers were sustained. Plaintiff electing to abide by his pleading, judgment of dismissal was entered. He appeals.

But two questions are presented. (1) Is the community property of the marital community subject to execution for the payment of a judgment against the husband alone for a tort committed by him alone, not in connection with the community business nor in furtherance of the community interest? (2) Is the complaint fatally deficient through lack of an allegation that the transfer was made after appellant's judgment was obtained?

There are three lines of our own decisions all having a direct bearing upon the first question and creating an impasse which necessitates the overruling or modification of some one of the three.

In the following cases, this court has held that the community personal property can be sold on execution to satisfy a judgment against the husband for his separate debt: *Powell v. Pugh*, 13 Wash. 577, 43 Pac. 879; *Gund v. Parke*, 15 Wash. 393, 46 Pac. 408; *Morse v. Estabrook*, 19 Wash. 92, 52 Pac. 531, 67 Am. St. 723. These decisions have never been followed in any case, nor, so far as we have been able to find, have they even been cited on this point in any of our later decisions. The majority opinion in *Powell v. Pugh*, Judge Gordon dissenting, is based upon a decision of the

territorial court (*Andrews v. Andrews*, 3 Wash. Terr. 286, 14 Pac. 68), in which the bare statement is made and based upon the statute defining community property (which so far as here concerned was the same then as now) without discussion. The other two decisions merely follow the *Powell* case.

In the following cases, this court has held that a person having a claim for damages sounding in tort is a *creditor* of the tort-feasor within the meaning of the statute of 13 Eliz. C. 5, which is the prototype of all statutes touching fraudulent conveyances, and is the common law of this state. That is to say, the tort-feasor is a *debtor* of the injured person within the meaning of the law of fraudulent conveyances. *Bates v. Drake*, 28 Wash. 447, 68 Pac. 961; *Sallaske v. Fletcher*, 73 Wash. 593, 132 Pac. 648, Ann. Cas. 1914D 760, 47 L. R. A. (N. S.) 320; *Allen v. Kane*, 79 Wash. 248, 140 Pac. 534; *Henry v. Yost*, 88 Wash. 93, 152 Pac. 714. These cases involved fraudulent conveyances of real estate but, touching the question who is a creditor and who is a debtor, that circumstance is obviously immaterial.

The third line of decisions involves torts committed by the managing member of the community. In the following cases, this court has held that community real estate cannot be subjected to levy to satisfy a judgment for the husband's tort which was not committed in the management of the community business nor for the benefit of the community. *Brotton v. Langert*, 1 Wash. 73, 23 Pac. 688; *Day v. Henry*, 81 Wash. 61, 142 Pac. 439; *Wilson v. Stone*, 90 Wash. 365, 156 Pac. 12. The opinion in *Day v. Henry* expressly and definitely places these decisions on the ground that, when the tortious act is wholly outside the scope of the husband's authority as manager of the community property, there is no room for the application of the doctrine of *respondeat superior*, and not upon the fact that the community property sought to be levied upon was realty. There is no intimation that a different rule would prevail in case of personalty. The argument in the *Day* case definitely precludes that view.

In the following cases, this court has held that a liability for the husband's tort which is committed in the management or prosecution of the community business can be enforced against the community property whether real or personal, but only because he is the *agent* acting for the community. These cases rest squarely upon the rule *respondeat superior*. *Kangley v. Rogers*, 85 Wash. 250, 147 Pac. 898; *Woste v. Rugge*, 68 Wash. 90, 122 Pac. 988; *Milne v. Kane*, 64 Wash. 254, 116 Pac. 659, Ann. Cas. 1913A 318, 36 L. R. A. (N. S.) 88; *McGregor v. Johnson*, 58 Wash. 78, 107 Pac. 1049, 27 L. R. A. (N. S.) 1022.

In not a single case has this court held or intimated that community property, whether real or personal, can be subjected to levy to satisfy a judgment against the husband alone for a tort committed by him alone and not in connection with the community business nor for the benefit of the community. On the contrary, the decisions above cited involving torts committed by the husband, by necessary implication, limit the liability of the community property, whether real or personal, for such torts to cases where it can be said that the tort was committed in the management of the community property or for the benefit of the community. This court is thus definitely committed to the doctrine that, in such cases, the liability of the community property of whatever kind rests solely upon the statutory agency of the husband and only exists where the rule *respondeat superior* can be soundly applied.

Invoking the first two of these lines of decisions, appellant's argument, syllogistically stated, is this: Under the first line, the community personalty is liable for the separate debt of the husband. Under the second line, a liability for damages for the tort of the husband is a debt of the husband within the meaning of the law of fraudulent conveyances. Therefore, the community personal property is subject to execution under a judgment for the husband's tort in whatever connection committed. It is plain that, if there is any

liability of the community personal property for the husband's acts, whether contractual or tortious, not performed in connection with the community business nor for the common benefit, it must be rested upon the provision of the statute, Rem. Code, § 5917, giving the husband the management, control and disposition of the community personalty, and it must be because that provision gives the husband the absolute *proprietary right* in such property and the wife no present right but only a contingent expectancy. Such is, in fact, the sole basis of the decision in *Powell v. Pugh, supra*, and the two cases following it. Simple candor, therefore, compels the admission that, if that view be sound, the community personal property can be subjected to the payment of the husband's separate liability for tort just to the same extent that it can be subjected to payment of his separate contract debt. Either the husband *has* such an absolute proprietary interest in the community personalty, or no act of his, whether contractual or tortious, can bind such property except through his agency for the community. To rest a distinction in this respect upon the technical definition of a debt as distinguished from a liability for tort would be simply absurd. It follows that we are forced either to overrule the case of *Powell v. Pugh, supra*, and the two decisions following it, or to hold that the community personal property is subject to execution for a judgment against the husband alone for a tort committed by him alone and in no manner connected with or redounding to the benefit of the community. The latter course would obviously stultify the reasoning of every one of the third class of decisions hereinbefore cited, where community property generally was held liable for a tort committed by the husband. It would force a shifting of their ground from that of a statutory agency to that of a statutory proprietary right in the husband. This impasse presented by our own decisions forces us to a reconsideration of the ground of decision in the *Powell, Gund,*

and *Morse* cases. If that ground is sound, the judgment here must be reversed. If it is not sound, the judgment here must be affirmed.

The same circumstances, all of them and no others, which *make* real estate community property make personalty community property. The two kinds of property are impressed with the community character by the same facts and by force of the same words in the same defining statute. All property, whether real or personal, "property and pecuniary rights" without exception, "acquired after marriage by either husband or wife, or both" otherwise than "by gift, bequest, devise or descent," is community property. Rem. Code, § 5917, by reference to §§ 5915 and 5916. It follows that the one kind of property, when so held and acquired, is just as absolutely the property of the community as such as is the other, and that neither member of the community has any independent *proprietary* interest or right in either. It follows, further, that the management and control conferred by statute (Id., §§ 5917 and 5918) on the husband as to both species of property, though differing in its extent as to the two kinds, is a management and control *for the community and in the community interest*. This necessarily results from the fact that it is the statutory entity—the community as such—which owns the property. The provision of the statute entrusting the husband with "the management and control of community personal property, with a like power of disposition as he has of his separate personal property, except he shall not devise by will more than one-half thereof" (Rem. Code, § 5917), must be construed in the light of this dominant fact of ownership. The property referred to is "community" property, that is, property belonging to the community. The husband is made, by the statute, the manager, not the owner. His management and control include the power of absolute disposition, but only for the community. Else there is no such thing as a vested property right in the

community as to any personal property, since the husband could give away all such property in any manner he pleased, except by will, at any time during the existence of the community. To hold that the whole substance of the term community property as applied to personalty consists in a mere contingent expectancy of the wife, would make of the term "community personal property" a palpable misnomer. It would take away every community element except the fact that the wife's labors and sacrifices had helped to earn it. It would destroy that equality which it is the obvious purpose of our community property law to conserve.

These considerations make it plain that the statute, in conferring upon the husband the management and control of the community property, though giving him the absolute power of disposition of community personalty, intends no more than to make him the statutory agent of the community. *Marston v. Rue*, 92 Wash. 129, 159 Pac. 111. The words of the statute are certainly no broader than those often employed in general powers of attorney for the management and disposition of personal property; but we have yet to learn of a case in which such a power, however broad, was held to destroy the estate of the donor of the power and subject the property to the personal debts of the attorney in fact. There is no reason, either in the words or purpose of the statute, why the statutory agency created for the same purpose of management should destroy the estate, substitute for it a shadowy defeasible expectancy in the wife, and subject the property to the purely personal debts, whether arising in contract or tort, of the husband. The assertion found in the *Powell* decision that the husband may sell the community personalty "to satisfy his individual debt and pass a good title," even if sound, is only so because the voluntary act of sale is within the scope of the husband's apparent authority as agent. The argument is conclusively answered by the dissenting opinion of Judge Gordon. He points out that the

husband's power of disposition, whatever its extent, "is to be voluntarily exercised." The authority "presupposes the exercise of discretion and assent, and hence such a sale or disposition of the property is to be distinguished from an involuntary execution sale, wherein the consent of the debtor is wholly immaterial."

We are now clear that Judge Dunbar in the case of *Brotton v. Langert, supra,* stated the correct principle when, referring to § 2409 of the Code of 1881, which is in substance the same as § 5917 of Rem. Code, he said: "This section discriminates in favor of one spouse only so far as is actually necessary for the transaction of ordinary business." This necessity is fully met by holding that the husband is the statutory managing agent of the community with an absolute discretion in the voluntary disposition of the community personalty, and that the statutory agency is no broader than a general power of attorney conferring a like discretion which has never been held to destroy the donor's estate by subjecting it *in invitum* to the payment of the attorney's individual debts or to satisfaction of his liability for his individual independent torts.

The rule announced by a divided court in the *Powell* case does not affect titles to real property, nor does it create any *vested property right* in the husband's creditors as such to the community personalty. To overrule that decision and the two which follow it cannot affect rights which have become vested by antecedent sales of such property on execution for the husband's separate debts. *Haskett v. Maxey,* 134 Ind. 182, 33 N. E. 358, 19 L. R. A. 379.; *Harris v. Jex,* 55 N. Y. 421, 14 Am. Rep. 285; *Kelley v. Rhoades,* 7 Wyo. 237, 57 Pac. 593, 75 Am. St. 904, 39 L. R. A. 594; 7 R. C. L. p. 1010, § 36. It can affect no rule of property, since the husband will still have every right of management, control, and voluntary disposition of the community personalty that he ever had, whatever those rights may be—a thing which it is

unnecessary now to decide. It certainly cannot affect injuriously either the husband, the wife, the community which they compose, nor any vested property rights of third parties. On the other hand, it will restore to our decisions a consonance with the plain policy of our community statute, which is to create and maintain an equality of the husband and wife in their joint earnings so far as the necessities of business management will permit. It will introduce a consistency into our own decisions which is now wholly wanting. These considerations make it plain that the doctrine of *stare decisis* cannot be soundly invoked to preserve the rule of the *Powell* case. The following often quoted language of the supreme court of Indiana seems peculiarly pertinent:

"Much as we respect the principle of *stare decisis*, we cannot yield to it when to yield is to overthrow principle and do injustice. Reluctant as we are to depart from former decisions we cannot yield to them, if, in yielding, we perpetuate error and sacrifice principle. We have thought it wisest to overrule outright rather than to evade, as is often done, by an attempt to distinguish where distinction there is none." *Paul v. Davis*, 100 Ind. 422, 428.

See, also, *Board of Com'rs of Jasper County v. Allman*, 142 Ind. 573, 42 N. E. 206, 39 L. R. A. 58; *Truxton v. Fait & Slagle Co.*, 1 Penn. (Del.) 483, 42 Atl. 431, 73 Am. St. 81; *Calhoun Gold Min. Co. v. Ajax Gold Min. Co.*, 27 Colo. 1, 59 Pac. 607, 83 Am. St. 17, 50 L. R. A. 209; *Oliver Co. v. Louisville Realty Co.*, 156 Ky. 628, 161 S. W. 570, Ann. Cas. 1915C 565, 51 L. R. A. (N. S.) 293; *Rumsey v. New York & N. E. R. Co.*, 133 N. Y. 79, 30 N. E. 654, 28 Am. St. 600, 15 L. R. A. 618.

The only possible ground of the *Powell, Gund*, and *Morse* decisions has been discredited by our decisions in the *Day, Kangley, Woste, Milne, McGregor* and *Marston* cases. We must overrule the former, or modify the latter in such a way as to necessitate the affirmance of the judgment here. We are clear that the *Powell, Gund*, and *Morse* decisions are unsound. They are hereby overruled.

Since our answer to the first question presented by this appeal must be in the negative, it is obvious that the question of pleading presented by the second is immaterial.

The judgment appealed from is affirmed.

HOLCOMB, MORRIS, MOUNT, MAIN, CHADWICK, and PARKER, JJ., concur.