[No. 29722.   Department One.   April 5, 1946.]

Roy C. Yates, *Appellant,* v. Fred Dohring, *Respondent.*[1]

[1]Reported in 168 P. (2d) 404.

*Simmons & McCann,* for appellant.

*Chavelle & Chavelle,* for respondent.

MALLERY, J.—Defendant and Grace Dohring were married in 1935 and lived together until April of 1941, when they separated by mutual consent. Thereafter, defendant made no contributions to his wife's support, and she sought none. After the separation, Grace Dohring took a trip to California. Returning to Seattle in May, 1942, she took up residence in the home of the plaintiff, where her mother was employed as a housekeeper. She agreed to pay plaintiff ten dollars per week for room and board, but, up to the time of her death, she had paid nothing, although she had been steadily employed at Boeing Aircraft Company in Seattle. In early 1943, Grace Dohring's mother and plaintiff were married.

At about that time, defendant, who had been inducted into the armed forces of the United States, waived his rights under the soldiers and sailors' relief act, thus enabling Grace Dohring to sue him for a divorce. She alleged among other things that the defendant had abandoned her and that she and defendant had been separated two years. An order of default was filed in that action on June 17, 1943. No interlocutory decree was entered.

On July 31, 1943, Grace Dohring died in Portland, Oregon, as a result of injuries received in an automobile accident. It was stipulated at the trial that the Dohrings were husband and wife at the time of her death. During the entire period of their separation, the Dohrings saw each other but once, on which occasion they met to discuss obtaining a divorce.

The defendant, as husband of the decedent, petitioned for and was granted letters of administration and, as administrator, successfully brought an action to recover for the wrongful death of his wife.

Neither plaintiff nor Grace Dohring's mother ever made a demand upon defendant for pay for his wife's room and board. However, in October, 1943, plaintiff filed a claim against Grace Dohring's estate for this item. The claim was

rejected, and plaintiff brought no action upon it within the statutory time.

Plaintiff, subsequently, commenced this action against the defendant personally, alleging that he had furnished at the special request of the wife, for the use and benefit of the marital community, board and lodging between May 23, 1942, and July 30, 1943, of the reasonable value of $615.72, computed at the rate of ten dollars per week. Defendant answered with a general denial, and a trial before the court resulted in a judgment of dismissal, hence this appeal.

Assigned as error are the dismissal and failure to grant the appellant a new trial.

The appellant seeks recovery under the authority of Rem. Rev. Stat., § 6906 [P. P. C. § 434-23], which provides:

"The expenses of the family and the education of the children are chargeable upon the property of both husband and wife, or either of them, and in relation thereto they may be sued jointly or separately."

The respondent contended that the statute is not applicable where the marital relationship has been severed and the family status no longer exists. The respondent's view is supported by our decisions, which, however, have stated the proposition negatively.

In *Russell v. Graumann,* 40 Wash. 667, 82 Pac. 998, 5 Am. & Eng. Ann. Cas. 830, the husband died in a Spokane hospital while his wife was in Pennsylvania. The plaintiff sued the wife to recover for hospital and physicians' services, predicating his action upon Bal. Code, § 4508, which is identical with Rem. Rev. Stat., § 6906. We there said:

"But, assuming that respondent may not at any time have been with her husband in the city of Spokane, it does not follow from that fact alone that the family relationship had in a legal sense been severed. It is not necessary that the husband and wife shall at all times reside together under the same roof, in order that the legal status of the family may be preserved. It is a matter of common knowledge that many husbands in their struggles for a livelihood are often required to be far from home, and for long periods of time, and that such enforced absences are in behalf of

the family, in order that the comforts of life may be provided for them. Such absence may be strong evidence of affection and regard for the family, rather than otherwise. It will not do to say that in such cases the family status is destroyed by somewhat continued absence of the husband. . . .

"*There is no positive evidence in the case that any intention ever existed on the part of either husband or wife to sever the family relationship.* . . . So far as the evidence discloses, an affectionate relationship continued to exist until the death of the husband." (Italics ours.)

In *In re DeNisson,* 197 Wash. 265, 84 P. (2d) 1024, the issue was whether, under the statute, the separate estate of an insane wife is liable for the necessary support of an aged and indigent husband, when they were not living together. The court there defined the word "family" as used in the statute as follows:

"The 'family' may, as in the case at bar, be without children or other dependents, and consist simply of husband and wife. But it is nonetheless a family. We have held that a surviving widow constitutes a family within the meaning of Rem. Rev. Stat. § 1476, [P. C. § 9896], which provides for allowances out of a decedent's estate 'for the maintenance of the family.' . . . If one spouse, surviving the death of the other, constitutes a family, then, certainly, both spouses, *if living in the marriage relation,* constitute a family." (Italics ours.)

Referring to *Russell v. Graumann, supra,* the *DeNisson* case continues:

"The opinion then points out the circumstances that may constitute merely a continued absence, as distinguished from a severence of the marriage relationship."

And again:

"From our analysis of the cases, and upon what we consider sound reasoning, we conclude that a wife's estate is separately liable for the expense incurred for the necessary and actual maintenance and support of an aged and indigent husband, provided *that the marital relationship has not been severed and there has* been no intentional separation." (Italics ours.)

In order to interpret the statute in question, which deals specifically with the family relationship, we must distin-

guish a marital relationship from a family relationship. They do not always coincide, since there are some legal marriages in which the spouses do not maintain a family relationship. Not only can these relationships be distinguished factually, but there is also a difference in the legal remedies available.

A marriage creates certain absolute rights and limitations. Thus, one contracting a marriage, regardless of the later conduct or intentions of the parties, is absolutely ineligible, until the marriage is dissolved, to contract a second marriage. Some of the rights and obligations of the spouses arising out of a marriage are mutual and reciprocal in their nature, and the remedies for breach of such rights are predicated upon the willingness of the aggrieved spouse to fulfill his or her obligations, according to his or her ability so to do. There is a marriage without a family, where the spouses or either of them fail and refuse to discharge all of their reciprocal obligations and live separate and apart from the other.

Where a spouse, by words or conduct, evidences an intention not to maintain the marriage state in its family aspects and disavows all marital obligations, the other is freed from the liabilities incident to the marital status, which are based upon the reciprocal aspects of the relationship. The old and familiar notice given to the public by a spouse that the other had left his bed and board without cause and that he will not be responsible for debts contracted hereafter by the other, is not an unfair statement of the rights of a spouse in that situation and the reason for it. One who stands ready and willing to discharge one's marital obligations in full, will not have one's rights extinguished by the acts of the other. But one who voluntarily absents oneself from the household with the intention of disavowing one's marital obligations, forfeits the right to family support provided for by the statute.

In this case, Grace Dohring, by her conduct, showed her unwillingness to fulfill her marital obligations. When she brought an action for divorce, she gave evidence of her intention to make the separation permanent. Thus, when

it affirmatively appears that she did not and would not meet her marital obligations, the respondent was freed from his liability for her support.

The appellant was aware of the separation and of its voluntary and permanent nature and cannot have been misled as to any liability on respondent's part for her support. He must look to her or her estate for the payment of her indebtedness.

It has been urged it would be inequitable to permit respondent to recover in an action for the wrongful death of a spouse and, at the same time, disavow his liability for her support. We are unable to examine the merits of his cause of action for wrongful death. That record is not before us. For all we know, the adverse party in that action may have mistakenly conceded to respondent a family status that he did not, in fact, have. In view of the undisputed fact, in this record, that the spouses had separated intentionally and permanently, we cannot predicate any liability against respondent solely upon the fact of his action for wrongful death having been successful, for the reason that this theory invokes the doctrine of estoppel, which was not pleaded and is hence not before us.

The judgment is affirmed.

DRIVER, C. J., STEINERT, and SIMPSON, JJ., concur.