ARMOREL KAMINS, PETITIONER *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT

Docket No. 5981–68.　Filed May 14, 1970.

*Ralph B. Potts*, for the petitioner.
*Stephen E. Silver*, for the respondent.

OPINION

Respondent does not dispute that the damage to the residence caused by the earthquake in 1965 constitutes a deductible casualty loss under section 165,[2] that the total amount of such loss was $16,853.48, or that Armorel subsequently received the residence as her separate property under the stipulated property settlement on July 21, 1965. The controversy herein is whether or not Armorel is entitled to deduct more than one-half of the casualty loss on her Federal individual income tax return for the year 1965.

Section 165(c)(3) provides that "a [casualty] loss * * * shall be allowed only to the extent that the amount of loss to [the] individual exceeds $100." It is clear that the extent of a casualty loss to an individual is determined by the extent of his interest in the property at the time the loss occurs. It is likewise clear that the amount of a casualty loss allowable to the owner of a joint undivided interest in jointly owned property is proportionate to his interest in such property. Accordingly, to allow Armorel to deduct more than one-half of the casualty loss, it must be shown that, at the time of the loss, she had more than a one-half interest in the residence. The determination of her interest in the residence must be made under the community property law of the State of Washington. *Lang* v. *Commissioner*, 304 U.S. 264 (1938) ; *S. E. Brown*, 52 T.C. 50 (1969).

The law of Washington is well settled that a husband and wife have vested, equal, and undivided interests in community property. *Poe* v. *Seaborn*, 282 U.S. 101, 111 (1930) ; *In re Wegley's Estate*, 65 Wash.2d 689, 399 P.2d 326 (1965) ; *In re Towley's Estate*, 22 Wash.2d 212, 155 P.2d 273 (1945) ; *In re Coffey's Estate*, 195 Wash. 379, 81 P.2d 283 (1938) ; *Bortle* v. *Osborne*, 155 Wash. 585, 285 Pac. 425 (1930) ; *Schramm* v. *Steele*, 97 Wash. 309, 166 Pac. 634 (1917) ; *United States* v. *Merrill*, 211 F.2d 397 (C.A. 9, 1954) ; and *Commissioner* v. *Larson*, 131 F.2d 85, 87 (C.A. 9, 1942).

---

[2] SEC. 165. LOSSES.

(a) GENERAL RULE.—There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise.

\* \* \* \* \* \* \*

(c) LIMITATION ON LOSSES OF INDIVIDUALS.—In the case of an individual, the deduction under subsection (a) shall be limited to—

\* \* \* \* \* \* \*

(3) losses of property not connected with a trade or business, if such losses arise from fire, storm, shipwreck, or other casualty, or from theft. A loss described in this paragraph shall be allowed only to the extent that the amount of loss to such individual arising from each casualty, or from each theft, exceeds $100.

Respondent takes the position that, at the time of the loss, the residence was community property and that, since Armorel owned only a one-half undivided interest therein at such time, she is entitled to deduct only one-half of the casualty loss. Although Armorel admits that the residence was community property when acquired, she contends that she is entitled to deduct the entire loss because the status of the residence was changed from community property to her separate property in one of three ways: (1) By a definite oral understanding between herself and Selwin; (2) by operation of Washington law, or (3) by equitable estoppel. We agree with respondent.

The burden of proof rests squarely on Armorel to show that the residence became her separate property and that such transformation occurred on or before April 28, 1965. *Welch* v. *Helvering*, 290 U.S. 111 (1933); Rule 32, Tax Court Rules of Practice. Indeed, under Washington law, "property acquired by purchase during marriage is presumed to be community property, and the burden rests on the spouse asserting its separate character to establish his or her claim by clear and satisfactory evidence." *Denny* v. *Schwabacher*, 54 Wash. 689, 104 Pac. 137, 138 (1909). See also *In re Slocum's Estate*, 83 Wash. 158, 145 Pac. 204, 205 (1915), where the Supreme Court of Washington stated: "The presumption as to the community character of the property may be overthrown only by evidence of a *clear*, *certain*, and *convincing* character." (Emphasis added.)

After a careful examination of the entire record, we conclude that Armorel has not sustained her burden of proving that the residence was converted from community property to her separate property on or before April 28, 1965.

1. *The Alleged Oral Agreement.*—Armorel's contention that the residence was transformed, prior to April 29, 1965, into her separate property by oral agreement between herself and Selwin is without any support in this record. Her attorney points out on brief that "nowhere in the record is there any statement oral or in writing by Selwin Kamins to the effect that he wanted the[residence]." But the absence of such evidence on this point, particularly where, as here, the burden of proof is on Armorel, does not constitute the "clear, certain, and convincing" proof necessary to show a transformation of the status of the residence from community property to Armorel's separate property.

There is no evidence of any agreement, oral or otherwise, that the residence, prior to April 29, 1965, would belong to Armorel as her separate property. To the contrary, the evidence shows that, prior to July 21, 1965, the parties were unable to reach any agreement with respect to the division of their community property. Several factors support our conclusion.

First, in his letter of April 27, 1965, just 2 days before the loss occurred, Potts wrote Guttormsen: "I assume from your talks with me that Mr. Kamins considers [the residence] community property *and so do I.*" (Emphasis added.) It is significant, we think, that Armorel's own attorney, who must be presumed to know Washington community property laws, was of the opinion that the residence was community property. To be sure, the position Potts took in the letter is inconsistent with, and therefore detracts from, that which he is urging on us in this proceeding.

Second, Pott's letter of May 7, 1965, to Guttormsen suggests that no agreement was concluded between the parties with respect to the residence until sometime after the earthquake. In that letter, Potts, in reference to the earthquake damage to the residence, stated: "Certainly, before trial, and if there is any talk of a settlement, [the residence] should be re-appraised before such talks are commenced." If the parties had reached the "definite oral understanding beginning * * * back in October and certainly in November (1964)" setting the residence over to Armorel as her separate property, there would not have been any need for Potts to be making the statement concerning "talk of a settlement" in May 1965, after the time of the loss.

Third, Armorel's testimony shows that the parties failed to reach a property settlement agreement prior to July 1965. She testified as follows:

Q. [Potts] Yes, now was there any agreement reached [at the November 1964 meeting]?

A. [Armorel] As to the exact settlement of the figure, no.

\* \* \* \* \* \* \*

Q. But just before trial [of the divorce action], I believe, an agreement was reached in which [Selwin] dropped the eighteen, demand for an eighteen thousand dollar judgment [sic], is that correct?

A. Yes.

Q. Otherwise the settlement proposed back in November of 1964 was substantially the same as that agreed upon?

A. All figures were based on December 31, 1964, all pretrial affidavits, all, everything.

Although the agreement reached in July 1965 was substantially the same as the one *proposed* in November 1964, this testimony makes it clear that no agreement was reached until July 1965.

Fourth, Guttormsen, Selwin's attorney in the divorce proceeding, testified "that there was no agreement reached with respect to the division of the property and that includes up to the date of the trial [in the divorce proceeding] itself." He further testified: "Both parties were ready to go to trial *when at that time* a property settlement agreement was reached between the counsel." The uncontroverted testimony of this witness, considered in conjunction with the other circum-

stances of this case, convinces us that the parties were unable to enter into any property settlement agreement prior to July 1965.

Having concluded that no agreement was reached before the crucial date of the loss, we do not have to consider the following questions: (1) Whether, under Washington law, the status of community real property can be changed to separate property by oral agreement between the spouses, or (2) whether the "oral agreement" was partially performed by Armorel's unilateral action in making certain repairs.

We note, in passing, that it is an apparently well-established principle of Washington law that the character of property cannot be changed from that of separate property to community property, or community to separate, by the oral agreement of the spouses alone. *In re Janssen's Estate*, 56 Wash.2d 150, 351 P.2d 510 (1960); *Leroux* v. *Knoll*, 28 Wash.2d 964, 184 P.2d 564, 566 (1967); *Rogers* v. *Joughin*, 152 Wash. 448, 277 Pac. 988, 991 (1929); *In re Parker's Estate*, 115 Wash. 57, 196 Pac. 632, 633 (1921); *Dobbins* v. *Dexter Horton & Co.*, 62 Wash. 423, 113 Pac. 1088, 1089 (1911); and *Churchill* v. *Stephenson*, 14 Wash. 620, 45 Pac. 28, 29 (1896).

We consider as irrelevant Armorel's argument that the statute of frauds does not apply to a stipulated property settlement made in open court between parties in a divorce action. No issue is raised herein with respect to the efficacy of the stipulated property settlement to divide the community property. It is essential to Armorel's argument that she prove she was the sole owner of the residence *at the time of the loss*. It avails her nothing to show that, subsequent to the loss, she succeeded to complete ownership thereof. Respondent readily concedes that the residence was converted to Armorel's separate property by operation of the stipulated property settlement, but not until July 21, 1965, which was after the date of the loss. The evidence clearly establishes that the status of the residence was not changed from community property to Armorel's separate property by oral agreement prior to July 21, 1965.

2. *Applicability of Community Property Laws.*—Next the petitioner argues that the community property law of Washington has no application to the circumstances of this case, but "that all we have * * * is whether or not petitioner should have the advantage of the depreciation [sic] in the value of the property by reason of the earthquake which [sic] she had set over to her by court order." To support this argument, petitioner relies on those cases which hold that when for all intents and purposes a marriage has been terminated and the spouses show by affirmative action their intent not to maintain the community status, then the community property laws will not be applied to the spouses *with respect to their future earnings*. See *Rustad*

v. *Rustad*, 61 Wash.2d 176, 377 P.2d 414 (1963) ; *MacKenzie* v. *Sellner*, 58 Wash.2d 101, 361 P.2d 165 (1961) ; *In re Janssen's Estate, supra; In re Armstrong's Estate*, 33 Wash.2d 118, 204 P.2d 500 (1949); *Togliatti* v. *Robertson*, 29 Wash.2d 844, 190 P.2d 575 (1948) ; *Yates* v. *Dohring*, 24 Wash.2d 877, 168 P.2d 404 (1946).[3] Petitioner's reliance on these cases is misplaced. They are clearly distinguishable. In each of them the court was confronted with the problem of determining whether, in the first instance, the earnings of a spouse were community or separate property where the marriage had been terminated in fact, but not legally dissolved. Contrary to petitioner's contention, these cases do not support the proposition that a de facto termination of a marriage in Washington automatically operates to divest a spouse of his or her present, equal, and undivided interest in the community property.

3. *Equitable Estoppel.*—Finally, the petitioner argues that the residence became her separate property by operation of equitable estoppel. This argument is based solely on the facts that Armorel spent $1,099.50 in February 1965 to shore up the foundation of the house and $2,439 shortly after the earthquake to make the needed repairs necessitated thereby, and that Selwin refused to defray any part of the expenses. We are not satisfied that, on the basis of these meager facts, the doctrine of equitable estoppel has any application in this case.

The Supreme Court of Washington in *Huff* v. *Northern Pacific Ry. Co.*, 38 Wash.2d 103, 114, 228 P.2d 121, 128 (1951), succinctly stated the doctrine of equitable estoppel as follows:

> Where a person with actual or constructive knowledge of facts induces another, by his words or conduct, to believe that he acquiesces in or ratifies a transaction, or that he will offer no opposition thereto, and that other, in reliance on such belief, alters his position, such person is estopped from repudiating the transaction to the other's prejudice.* * * [Citing authorities.]

See also *Kessinger* v. *Anderson*, 31 Wash.2d 157, 196 P.2d 289 (1948) ; and *Thomas* v. *Harlan*, 27 Wash.2d 513, 178 P.2d 965 (1947). Courts in Washington, reluctant to apply estoppel where its effect would be to divest a person of an estate in land, require "very clear and cogent evidence to estop an owner out of a legal title to real property." *Finley* v. *Finley*, 43 Wash.2d 755, 264 P.2d 246, 252 (1954) ; *Mugaas* v. *Smith*, 33 Wash.2d 429, 206 P.2d 332 (1949) ; *Tyree* v. *Gosa*, 11 Wash.2d 572, 119 P.2d 926 (1941) ; *Briggs* v. *Murray*, 29 Wash. 245, 69 Pac. 765 (1902). But here there is no competent evidence to estop Selwin out of

---

[3] The Internal Revenue Service has adopted the principle of these decisions in Rev. Rul. 68–66, 1968–1 C.B. 33, which provides in pertinent part :

"When for all intents and purposes a marriage has been terminated in the State of Washington, but not legally dissolved, and the spouses show by affirmative action their intent not to maintain the community status, no portion of the earnings of the husband is includible in the gross income of the wife where she has not received any of such earnings."

his legal title to, or community property interest in, the residence. Certainly his refusal to share the cost of the repairs in no way operated to divest him of his interest in the residence. Nor has Armorel shown any detrimental reliance on her part. It should be noted that the $2,439 expended by Armorel to repair the earthquake damage is considerably less than the amount equal to one-half of the loss which respondent allowed her with respect to the earthquake damage. Moreover, since the property settlement was reached after the earthquake, it is reasonable to assume that the diminution in the value of the residence caused by the earthquake was taken into account by both parties in arriving at an equitable division of their community property. Under these circumstances we think the petitioner has failed to establish that the residence became her separate property by operation of equitable estoppel.

Accordingly, we hold that Armorel is not entitled to deduct more than one-half of the casualty loss.

*Decision will be entered for the respondent.*