Robert F. Casey v. Commissioner.
Casey v. Commissioner
Docket No. 1874-70 SC.
United States Tax Court
T.C. Memo 1971-12; 1971 Tax Ct. Memo LEXIS 323; 30 T.C.M. (CCH) 60; T.C.M. (RIA) 71012; January 18, 1971, Filed Robert F. Casey, pro se, 401 N. Country Club Dr., McHenry, Ill. Burt L. Kahn, for the respondent. JOHNSTON Memorandum Findings of Fact and Opinion JOHNSTON, Commissioner: Respondent determined a deficiency of $110.46 in petitioner's income tax for the taxable year 1965. The issues before us are (1) whether the petitioner is entitled to a claimed deduction for educational expenses in the amount of $334.00 and (2) whether petitioner is entitled to claimed casualty loss or losses of $280.00. Findings of Fact Some of *324 the facts have been stipulated and those facts have been found. Petitioner resided at 401 North Country Club Drive, McHenry, Illinois, 60050, at the time he filed his petition. He filed his Federal income tax return for 1965 with the district director of internal revenue, Chicago, Illinois. After graduation from Leo High School in June, 1960, petitioner attended Northern Illinois University, DeKalb, Illinois; Bogan Junior College, Chicago Illinois; Loyola University (summer session) Chicago, Illinois; and, the University of Notre Dame, South Bend, Indiana. Petitioner attended the University of Notre Dame from September 20, 1962 to June, 1964. Petitioner attended Loyola University during June through August, 1964. The credits received from Loyola University were applied towards his degree at the University of Notre Dame. Petitioner was awarded a Bachelor of Arts Degree from the University of Notre Dame on February 1, 1965 with a major in sociology. The records of the University of Notre Dame show the permanent address for the petitioner at the time of his admission and enrollment at the University was 7755 South Honore Street, Chicago, Illinois. Petitioner attended the College *325 of Law (day division) DePaul University, Chicago, Illinois, from September 14, 1964 through May 28, 1965. In his application for admission to DePaul University College of Law dated August 1, 1964, petitioner in response to the question "Do you live with your parents?" answered "Yes". In response to the question "Where will you live while attending the College of Law?" he answered "Home, 7755 So. Honore, Chicago, Illinois." Petitioner resided with his parents at 7755 South Honore Street, Chicago, Illinois, while attending DePaul University. On May 6, 1965, the petitioner wrote a letter to the Executive Secretary, Board of U.S. Civil Service Examiners, Post Office Department, 528 Federal Building, Indianapolis 4, Indiana, stating that his home address had changed from 1127 North St. Peter Street, South Bend, Indiana, to 7755 South Honore Street, Chicago, Illinois, 60620. In that letter petitioner asked to have his eligibility rating transferred to the United States Post Office, Main Post Office Building on West Van Buren Street, Chicago, Illinois, because he was then seeking employment there. On May 10, 1965, the petitioner informed the Board of U.S. Civil Service Examiners in Chicago, *326 Illinois, that the effective date of his change of address from South Bend to Chicago was June 1, 1964. In the same communication, in response to the inquiry "Is NEW address permanent?" the petitioner answered "Yes". On June 21, 1965, petitioner in completing Standard Form 85 issued by the U.S. Civil Service Commission entitled Security Investigation Data for Non-Sensitive Position petitioner showed his then present place of residence as 7755 South Honore Street, Chicago, Illinois, 60620. On August 3, 1965, petitioner, in completing Standard Form 2809 of the United States General Accounting Office entitled Health Benefits Registration Form, Federal Employees Health Benefits Program, showed as his mailing address 7755 South Honore Street, Chicago, Illinois, 60620. The petitioner registered to vote with the Election Board of McHenry County, Illinois, in October, 1965, and showed as his Post Office address of residence, 401 North Country Club Drive, McHenry, Illinois. In his registration form, he stated he resided at 401 North Country Club Drive from 1963 to the date the form was executed, October 26, 1965. In April, 1965, petitioner was interviewed by the superintendent of the *327 McHenry Consolidated School District No. 15 for a position teaching school in McHenry, Illinois, starting September, 1965. The superintendent suggested to the petitioner that it would be "worth his while" to look into some other educational courses to help improve his "skills as a teacher". On June 8, 1965, petitioner was notified by memorandum from Robert L. 62 Brissenden, Secretary of the State Teacher Certification Board, Springfield, Illinois, that an evaluation of his transcript from the University of Notre Dame indicated that he had deficiencies for a Standard Elementary Certificate. The subjects and number of hours indicated as deficiencies were Art - 1 hour; Educational Psychology (including human growth and development) - 2 hours; Methods and Techniques of teaching on the elementary level - 2 hours; History and/or Philosophy of Education - 2 hours; Methods of Teaching Reading - 2 hours; Student Teaching (Grades K-9) - 5 hours; Electives to total 16 semester hours - 3 hours. He was also notified that he had deficiencies for a Standard High School Certificate as follows: Educational Psychology (including human growth and development) - 2 hours; Methods and techniques *328 of teaching on the secondary level or in a teaching field - 2 hours; History and/or philosophy of education - 2 hours; student teaching (Grades 6-12) - 5 hours; and Electives to total 16 semester hours - 5 hours. Petitioner was issued a Provisional Elementary K-9 Teaching Certificate on July 1, 1965, by the State Teacher Certification Board, State of Illinois and Richard L. Tazewell, County Superintendent of McHenry County which was registered with R. L. Tazewell, County Superintendent of McHenry County, July 1, 1965. Petitioner was enrolled at Chicago Teachers' College - South, Chicago, Illinois, (day division) and attended its 8 week summer session in 1965 from June 28, 1965, through August 20, 1965. In an agreement, entitled Teachers' Contract, between the Board of Education of the McHenry Consolidated School District No. 15 and the petitioner, dated July 6, 1965, the petitioner is described as "a legally qualified teacher". The agreement, which was executed on behalf of the school board by A. J. Uttick, President, Board of Education, provided that the petitioner was to teach the classes assigned to him by the superintendent for the school year beginning September 1, 1965, and *329 closing August 31, 1966. From about May 28, 1965, which was the ending of the Spring Term of the College of Law, DePaul University, Chicago, Illinois, to about June 25, 1965, petitioner resided at 401 North Country Club Drive. About June 25th he returned to Chicago to attend Chicago Teachers' College - South, Chicago, Illinois. While attending Chicago Teachers' College - South, petitioner rented a room at 7915 Laflin Street, Chicago, Illinois. Petitioner was employed full time, on the night shift, by the Chicago Post Office from July 3, 1965, through September 4, 1965. While in attendance at Chicago Teachers' College for its 8 weeks summer session in 1965 petitioner expended on a daily basis an average of $3.25 for a period of 55 days; he expended $100.00 for lodging which represents 2 months rent at $50.00 per month. His transportation expenses to and from Chicago Teachers' College during this period were $24.00 based on a daily carfare rate of 60 cents per day. He traveled a distance of approximately 150 miles by his automobile which represented one round trip from McHenry, Illinois, to Chicago and return to attend the 8 weeks summer session. The initial trip to Chicago from *330 McHenry occurred around June 25, 1965. The return to McHenry from Chicago occurred sometime after the completion of the summer session of the Chicago Teachers' College - South. On January 14, 1960, petitioner and his sister Madonna M. Casey acquired, as joint tenants, three lots and a dwelling house in McHenry, Illinois, the premises being known as 401 North Country Club Drive, McHenry, Illinois. The deed of purchase was filed with the Recorder of Deeds of McHenry County, Illinois, on June 15, 1960, as Document Number 370875 and duly recorded in Book 630 of Records on page 18. A certificate to this effect was made by Harry C. Herendeen, Recorder of Deeds, McHenry County, Illinois, on October 20, 1970. The dwelling house is a bungalow type cottage. The purchase price was the basis in the hands of the sellers, the father and mother of the petitioner. The parents of the petitioner had purchased the property known as 401 North Country Club Drive for $12,000 in 1953. In 1959, a furnace and other additions were made to the house at a cost of about $4,000 or $4,500. At the time of the acquisition of the property at 401 North Country Club Drive in 1960, the petitioner paid more than *331 half of his parents' original purchase price for the property. Madonna Casey did not pay any money toward the purchase of the property. Neither petitioner nor his sister Madonna gave a mortgage to the parents for the balance of the purchase price. There is no 63 evidence of the amount of any subsequent payments on the purchase price. On May 16, 1965, [1] a thermo-pane window on the south side of the premises at 401 North Country Club Drive was pierced by a steel B-B shot. A report was made to the McHenry County Sheriff's Department and an investigation made by Officer Carr of that Department did not reveal the person
1961 $ 757,224.19 $82,748.31 $ 0 $.1655 $1. thermo-pane window. The hole in the thermo-pane window caused the window to fog or mist so that it was no longer transparent. *332 The replacement cost of the thermo-pane window totaled $176.10 and consisted of $119.29 for a new frame and window and $56.81 for labor costs of installation. In December, 1965, [2] two evergreen trees on the property at 401 North Country Club Drive were stripped of their branches by unknown vandals. The height of each of the trees was somewhere between 30 to 60 feet. Ultimate Finding of Fact The petitioner was not employed or in the trade or business of being a teacher prior to the commencement of his employment with the Board of Education of the McHenry Consolidated School District No. 15 on September 14, 1965. Opinion The petitioner is claiming a deduction for living expenses consisting of rent, meals and transportation while attending Chicago Teachers' College - South, during the period June 28, 1965, through August 20, 1965. The petitioner had never been employed as a teacher prior to undertaking these courses. He did not become actively employed as a teacher until after completion of these courses. The courses were educational courses undertaken to help improve his skills as a teacher. We have found that the petitioner was not in a trade *333 or business or employed as a teacher during the period in which these expenses were incurred. In order to deduct educational expenses under section 162 of the Internal Revenue Code of 1954, it must first be established that the taxpayer was carrying on a trade or business, including the trade or business of being an employee. Since the petitioner has not met this test he is not entitled to the deductions claimed. It is recognized that the Internal Revenue Service allowed petitioner certain educational expenses incurred prior to his employment as a teacher. We do not intend by this opinion to disturb any prior allowances. Although the petitioner was employed in the Chicago office of the Post Office Department during the period that he was attending Chicago Teachers' College - South, it is clear from the record that these educational expenses were not incurred for the purposes of maintaining or improving his skills in his employment with the United States Post Office. The respondent argues that petitioner is not entitled to deduct the expenses in question because his tax home was Chicago. Petitioner contends his tax home was McHenry, Illinois. Since we have decided *334 that petitioner was not in a trade or business while attending Chicago Teachers' College - South, we do not reach this issue. Petitioner also claims casualty losses resulting from the destruction of a thermopane window and two evergreen trees by vandalism. Although testimony was given attempting to prove that both the window and the trees were damaged at the same time, other evidence of record indicates that the events did not occur at substantially the same time. Accordingly, we find that there were two casualties. We find the amount of the casualty loss resulting from the destruction of the thermo-pane window was $176.05. However, we find that this casualty was the loss of the petitioner and his joint co-owner of the property, his sister, Madonna M. Casey. Therefore, the petitioner's loss did not exceed $88.03 and section 165(c)(3) of the Internal Revenue Code of 1954 allows casualty losses only to the extent they exceed $100.00. This case cannot be distinguished in principle from Walter G. Morley, 8 T.C. 904 (1947), where the taxpayer, contending that since he paid for certain real property from his own funds and at all times exercised dominion *335 over it and since title was taken jointly with his wife only for convenience, he was the real owner and was entitled to take the entire 64 loss from the sale of the property. This Court disagreed with this contention and allowed as a deduction only one-half of the loss sustained on the sale in that case. In this case petitioner alleges that conveyance of the McHenry property to himself and his sister as joint owners was for convenience. It appears from the record that one of the conveniences intended was the vesting of title to the property in Madonna Casey as the surviving joint owner in the event of the petitioner's untimely death. Petitioner and his sister cannot dissolve the legal relationships created by the recorded deed solely by oral or written statements to this Court. At the time of trial no change had been made in the recorded ownership of the property. Cf. Leroy N. Bonkowski, T.C. Memo 1970-340. Accordingly, we find that petitioner is entitled only to one-half of the casualty loss. Armorel Kamins, 54 T.C. 977 (1970). The petitioner attempted to establish the casualty loss resulting from the destruction of the two evergreen trees by vandalism *336 by introducing in evidence written statements of nurserymen date November 1, 1970, giving estimates of the replacement cost of evergreen trees of several varieties and different heights. It must be assumed that these estimates relate to 1970 and not to the year before the Court, 1965. The petitioner was told at the trial by the Court that although the nurserymen's estimates would be admitted as evidence that they were not believed adequate for the purpose for which offered. They were offered to prove the damage suffered by the petitioner by the destruction of the two evergreen trees on his property. Ornamental trees are treated as an integral part of real property and no separate basis is assigned to them. Buttram v. Jones, 87 F. Supp. 322 (W.D. Okla.; 1943). The amount of loss resulting from the destruction of ornamental trees or shrubs through a casualty is the fair-market value of the property immediately before the casualty reduced by its fair-market value immediately after the casualty. Section 1.165-7(f), Income Tax Regs. The petitioner offered no evidence as to either of these values other than a bare statement of his opinion of the value of the property. Such *337 evidence as has been offered is insufficient for his purposes. Conseqeently, he is not entitled to any deduction for a casualty loss as a result of the destruction of the trees in 1965. Western Products Co., 28 T.C. 1196 (1957). There is no evidence of record of the cost of removal of the damaged evergreen trees from the property or even that they had ever been removed. Reviewed and adopted as the report of the Small Tax Case Division. Decision will be entered for the respondent. Footnotes
1. Petitioner in his brief states "Hole shot through Thermopane Window and tree damage was done some time during Christmas Vacation which was seen when Petitioner and Mother returned from Vacation to begin her teaching duties in January 1965." If this statement is correct, the casualties occurred in 1964, a year not before this Court. We have chosen to treat it as a typographical error. Petitioner's witness made a similar statement but this conflicts with other evidence offered by the petitioner and the respondent.↩
2. See footnote 1 supra.↩